## RALPH W. P. BUCKMAN *v.* PEOPLE EXPRESS, INC.
## (13071)

HEALEY, CALLAHAN, GLASS, F. HENNESSY and STOUGHTON, Js.

Argued June 9—decision released September 1, 1987

*Samuel B. Feldman,* with whom, on the brief, was *Gregory T. D'Auria,* law student, for the appellant (defendant).

*John F. McKenna,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. This is an appeal from a jury verdict for the plaintiff, Ralph W. P. Buckman, in the amount of $51,595.94. On appeal, the defendant, People Express, Inc., claims that the trial court erred in (1) instructing the jury as to bad faith, (2) improperly allowing a recovery for emotional distress, and (3) refusing to grant its motion for remittitur.

The jury could reasonably have found the following background facts. On December 14, 1984, the plaintiff was terminated from his employment with the defendant. On the day after his termination, the plaintiff, citing various medical problems,[1] wrote a letter to the defendant, a self-insurer, advising it that he wished to continue his health insurance coverage and requesting that the defendant send him an insurance conversion form. Subsequent to this written request, the plaintiff, on a number of occasions, made or attempted to make several oral requests to the defendant for a conversion form. The defendant did not comply with the plaintiff's requests. The plaintiff then contacted an attorney who in turn sent a letter to the defendant fully explaining the situation and requesting an insurance conversion form. This letter was not answered by the defendant.

From December 15, 1984, until early March, 1985, the plaintiff was under the impression that he had no medical coverage. As a result, he became withdrawn, very depressed, unable to eat or sleep, upset and teary, and felt inadequate and irresponsible as a husband and father.[2] Citing, inter alia, this emotional distress, the

---

[1] At the time, the plaintiff had been suffering from an ulcer as well as serious dental problems. The plaintiff's wife had been enduring a difficult pregnancy and, in fact, during this time period, delivered their child two months premature.

[2] The plaintiff's wife testified that he was distressed and stressed, that he didn't eat or sleep well, that he was teary, his ulcer was again a problem and that he became very frustrated. The plaintiff's former attorney

plaintiff filed suit against the defendant. In the first count, the plaintiff sought a recovery based on the "defendant's failure to enable [him] to continue coverage" pursuant to General Statutes § 38-262d.[3] In the second count, the plaintiff sought a recovery based on the defendant's failure "to act in good faith with regard

testified that the plaintiff was very upset and distressed about not being able to extend his coverage. We note that the plaintiff subsequently discovered that his wife's insurance carrier would pay a portion of their medical expenses.

[3] General Statutes § 38-262d provides: "CONVERSION AND EXTENSION RIGHTS ON GROUP COVERAGE. LIABILITY OF GROUP EMPLOYERS. (a) Whenever any individual who is a member of any group hospital, surgical or medical insurance plan becomes ineligible for continued participation in such plan for any reason including death or whenever any individual who is a spouse of a member becomes ineligible for continued coverage as a dependent under such plan as a result of dissolution of marriage, the benefits of such plan shall be made available by the employer at the same group rate to the individual, the surviving or former spouse and the dependents covered by the group plan, for an extension period of thirty-nine weeks or until such member, surviving or former spouse or dependent becomes eligible for benefits under another group plan, whichever occurs first. The employer shall inform the individual, surviving spouse or dependent of such spouse, in writing, of his right to continue coverage pursuant to this subsection within ten days after the member becomes ineligible to participate in the plan. If the individual, surviving or former spouse or dependent elects to continue participation in the group plan, he shall so notify the employer, in writing, within thirty days after the member becomes ineligible to participate or the spouse of a member becomes ineligible for continued coverage as a dependent. The member, surviving or former spouse or dependent shall be responsible for payment of premiums to the employer or policyholder throughout the extension period. Upon termination of the extension period, the member, surviving or former spouse or dependent shall be entitled to exercise any option which is provided in the group plan to elect a converted policy. After timely receipt of the premium payment from the individual or surviving or former spouse, if the employer fails to make payment to the insurer or hospital or medical service corporation with the result that coverage is terminated, the employer shall be liable for benefits to the same extent as the insurer or hospital or medical service corporation would have been liable if coverage had not been terminated.

"(b) The provisions of this section shall apply to group policies issued pursuant to chapter 681 and to group hospital and medical expense policies and group hospital and medical service plan contracts issued pursuant to chapters 592 and 593."

to the interests of the plaintiff in continued group coverage . . ." Based on these two counts, the plaintiff sought "[d]amages; [p]unitive or exemplary damages; [a]ttorneys' fees and costs; [i]nterest; and [s]uch equitable relief as the court deems proper." The jury awarded the plaintiff $51,595.94 in damages.[4]

After the trial court denied the defendant's motions to set aside the verdict and for remittitur, the defendant, on October 9, 1986, filed an appeal in the Appellate Court. On December 19, 1986, this court transferred the appeal to itself. Practice Book § 4023. On June 3, 1987, this court granted the plaintiff's motion for expedited hearing. Practice Book § 4187.

I

The defendant's first claim is that the trial court erred in instructing the jury as to the bad faith alleged in the second count of the plaintiff's complaint. In support of this claim, the defendant argues that such instructions were inappropriate because General Statutes "§ 38-262d (a) provides the plaintiff with the sole remedy," namely, that "the employer shall be liable for benefits to the same extent as the insurer or hospital or medical service corporation would have been liable if coverage had not been terminated." The defendant maintains that the employee is "made whole" by the statute and that "[n]owhere in the statute's legislative history does there occur a hint that the legislature meant to provide a recovery for 'bad faith.' "[5]

General Statutes § 38-262d provides that whenever an employee who is a member of a group hospital or medical insurance plan becomes ineligible for continued participation in such plan for any reason, the medical

---

[4] Of this amount, $1595.94 is agreed by the parties to be the plaintiff's out-of-pocket damages.

[5] We note that the defendant did not file a request to revise or a motion to strike count two of the amended complaint.

benefits under such plan shall be made available by the employer to the employee for an extension period of thirty-nine weeks or until the discontinued employee becomes eligible for benefits under another group medical insurance plan. The statute further provides that the employer must inform the employee in writing of his right to continue his medical insurance coverage within ten days after the employee becomes ineligible to participate in the group plan. If the employee elects to continue participation in the group plan, he must notify the employer within thirty days after he becomes ineligible to participate in the group plan. To continue coverage, the employee is responsible for payment of the premium to the employer, policyholder or insurance carrier during the extension period. If, after timely receipt of the premium, the employer fails to make payment to the insurer, the employer is liable for benefits to the same extent as the insurer would have been liable if coverage had not been terminated.

The premise of the defendant's argument that the trial court erred in instructing the jury relative to a claim of bad faith is the assumption that, under the facts of this case, the only cause of action available to the plaintiff is a cause of action based on the violation of the statute. This assumption, however, is erroneous because this court recognizes an independent cause of action in tort arising from an insurer's common law duty of good faith. This cause of action is separate and distinct from the plaintiff's statutory claims. See *Magnan* v. *Anaconda Industries, Inc.,* 193 Conn. 558, 566, 479 A.2d 781 (1984); *Burgess* v. *Vanguard Ins. Co.,* 192 Conn. 124, 127, 470 A.2d 244 (1984); *Bibeault* v. *Hanover Ins. Co.,* 417 A.2d 313 (R.I. 1980). An "implied covenant of good faith and fair dealing has been applied by this court in a variety of contractual relationships, including . . . insurance contracts; *Hoyt* v. *Factory Mutual Liberty Ins. Co.,* 120 Conn. 156, 159, 179 A.

842 (1935); *Bartlett* v. *Travelers Ins. Co.,* 117 Conn. 147, 155, 167 A. 180 (1933); cf. *Grand Sheet Metal Products Co.* v. *Protection Mutual Ins. Co.,* 34 Conn. Sup. 46, 375 A.2d 428 (1977) . . . ." *Magnan* v. *Anaconda Industries, Inc.,* supra; see also 2 Restatement (Second), Contracts § 205 (1979); 43 Am. Jur. 2d, Insurance §§ 141, 142; 3 G. Couch, Insurance 2d (Rhodes Rev. 1984) § 25.32. Given the fact that, in this case, the defendant was both the insurer and employer of the plaintiff, it had a common law duty to act with good faith and fair dealing toward the plaintiff.

The trial court instructed the jury that the defendant, "as a self-insurer, had the duty and obligation under the law to deal fairly and in good faith with its insured . . . . " The court instructed the jury that "[g]ood faith and fair dealing mean an attitude or state of mind denoting honesty of purpose, freedom from intention to defraud and generally speaking means faithful to one's duty or obligation . . . an honest intention not to take an unconscientious [sic] advantage of another. . . . " The court also instructed the jury that "[b]ad faith is defined as the opposite of good faith, generally implying a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties . . . . " The court further instructed the jury that "bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or ill will."[6]

---

[6] We note that the court's instructions were in substantial accord with the plaintiff's request to charge and the defendant did not make a clear exception to the charge on this basis. Practice Book § 315. We also point out that, contrary to the requirement of Practice Book § 4065 (d) (2), the defendant's brief does not "include a verbatim statement of all relevant portions of the charge and all relevant exceptions to the charge."

Based upon the general verdict rendered by the jury,[7] we must presume that the jury found that the defendant acted in bad faith in failing to provide the statutorily mandated notice. From the general verdict, we must also presume that the jury found that this failure on behalf of the defendant resulted in the plaintiff's inability to elect to continue in the group plan which in turn, we must presume, caused the plaintiff's damages. The fact that § 38-262d provides a statutory remedy to the plaintiff does not eliminate the plaintiff's independent cause of action based on the defendant's breach of its common law duty of good faith. As this court has recently noted, " ' "[n]o statute is to be construed as altering the common law, farther than its words import [and that a statute] is not to be construed as making any innovation upon the common law which it does not fairly express." *Shaw* v. *Railroad Co.,* 101 U.S. 557, 565, 25 L. Ed. 892 [1879].' *Dennis* v. *Shaw,* 137 Conn. 450, 452, 78 A.2d 691 (1951); *Stolberg* v. *Caldwell,* 175 Conn. 586, 607, 402 A.2d 763 (1978); 2A J. Sutherland, Statutory Construction (Sands 4th Ed.) § 50.05." *State* v. *Sanchez,* 204 Conn. 472, 479, 528 A.2d 373 (1987). The trial court did not err in instructing the jury as to the bad faith alleged in the second count of the plaintiff's complaint.

---

[7] "The [general verdict] rule applies whenever a verdict for one party could reasonably be rendered on one or more distinct causes of action. . . . " *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 202, 520 A.2d 208 (1987), citing *Matthews* v. *F.M.C. Corporation,* 190 Conn. 700, 706, 462 A.2d 376 (1983). The rule provides that if "a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. *Stone* v. *Bastarache,* 188 Conn. 201, 204, 449 A.2d 142 (1982); *Colucci* v. *Pinette,* 185 Conn. 483, 489, 441 A.2d 574 (1981)." *Finley* v. *Aetna Life & Casualty Co.,* supra. "A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. Alternatively, if the action is in separate counts, a party may seek separate verdicts on each of the counts. *Ziman* v. *Whitley,* 110 Conn. 108, 113–15, 147 A. 370 (1929)." *Finley* v. *Aetna Life & Casualty Co.,* supra, 203. The defendant in this case did not submit interrogatories nor did it seek separate verdicts on each of the counts.

## II

The defendant's second claim of error is that the trial court erred in allowing the plaintiff to recover for his mental and emotional distress. The defendant argues that the plaintiff cannot recover for any claimed mental and emotional distress because the plaintiff did not plead or prove that the defendant knew or should have known "'that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, *might result in illness or bodily harm.'* [*Montinieri* v. *Southern New England Telephone Co.,* 175 Conn. 337, 345, 398 A.2d 1180 (1978)]." (Emphasis in original.) *Morris* v. *Hartford Courant Co.,* 200 Conn. 676, 683, 513 A.2d 66 (1986); see also 2 Restatement (Second), Torts § 313 (1965). Although we agree with the principle of law advocated by the defendant, under the facts of this case, we are unpersuaded by the defendant's argument.

In our view, the plaintiff's allegations that "[t]he defendant's failure to enable the plaintiff to continue coverage pursuant to . . . § 38-262d of the Connecticut General Statutes caused the plaintiff financial loss and mental distress and anguish" and that "the defendant's bad faith conduct has caused the plaintiff financial loss and mental distress and anguish" thoroughly apprised the defendant of the plaintiff's intent to pursue a claim for mental and emotional distress. See *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* 202 Conn. 206, 220, 520 A.2d 217 (1987). As we stated in *D'Ulisse-Cupo,* "[a]lthough the complaint could have alleged the nature of [the claim] more precisely . . . under the rules of practice governing pleading, a party may plead legal effect as long as the pleading 'fairly [apprises] the adverse party of the state of facts which it is intended to prove.' Practice Book § 109; see Practice Book § 108." Id.; see *Leabo* v.

*Leninski,* 2 Conn. App. 715, 720, 484 A.2d 239 (1984). This principle is especially apposite to the facts of this case in that the defendant did not file a motion to strike that part of the complaint nor did it file a request to revise. Additionally, we note that at trial the defendant did not object to the introduction of evidence as to the plaintiff's mental and emotional distress, nor did it except to the judge's instructions in this regard. Moreover, the evidence presented at trial was sufficient to establish this claim. Under these circumstances, the defendant is not entitled to attack, at this late date, the sufficiency of the complaint in this regard.[8]

### III

The defendant also claims that the trial court erred in refusing to order a remittitur where only $1595.94 of the $51,595.94 constituted special damages. The defendant argues that "even if the trial court properly found emotional distress, a $50,000 award so shocks one's sense of justice that the trial court erred in denying [its] motion for remittitur."

"The trial court has the inherent power to set aside a jury verdict which, in the court's opinion, is either against the law or the evidence . . . . Pursuant to this power, the trial court has the right and duty to set aside a verdict as being excessive or inadequate. *Lengel* v. *New Haven Gas Light Co.,* 142 Conn. 70, 78, 111 A.2d 547 (1955)." *O'Brien* v. *Seyer,* 183 Conn. 199, 208, 439 A.2d 292 (1981). "The assessment of damages is peculiarly within the province of the trier and the award will be sustained so long as it does not shock the sense

---

[8] We note that in *Morris* v. *Hartford Courant Co.,* 200 Conn. 676, 513 A.2d 66 (1986), the appeal was before this court pursuant to a motion to strike and that *Montinieri* v. *Southern New England Telephone Co.,* 175 Conn. 337, 345, 398 A.2d 1180 (1978), involved a challenge to the jury instructions relative to a claim for emotional distress. In *Montinieri,* there was no claim as to the sufficiency of the complaint. An examination of the record shows that the defendant can hardly claim any surprise.

of justice. The test is whether the amount of damages awarded falls within the necessarily uncertain limits of fair and just damages. *Manning* v. *Michael,* 188 Conn. 607, 616, 452 A.2d 1157 (1982)." *Herb* v. *Kerr,* 190 Conn. 136, 139, 459 A.2d 521 (1983); see also *Kiniry* v. *Danbury Hospital,* 183 Conn. 448, 461, 439 A.2d 408 (1981). We are aware that "we cannot disturb the decision of the trial court unless there are 'considerations of the most persuasive character.' " *Birgel* v. *Heintz,* 163 Conn. 23, 27, 301 A.2d 249 (1972); *Hauk* v. *Zimmerman,* 135 Conn. 259, 261, 63 A.2d 146 (1948); *Dunstan* v. *Round Hill Dairy Inc.,* 128 Conn. 300, 302–303, 22 A. 631 (1941). The trial judge has a broad legal discretion and his action will not be disturbed unless there is a clear abuse. *Birgel* v. *Heintz,* supra; *Slabinski* v. *Dix,* 138 Conn. 625, 628, 88 A.2d 115 (1952). The evidence offered at trial must be reviewed in the light most favorable to sustaining the verdict. *Gorczyca* v. *New York, N.H. & H. R. Co.,* 141 Conn. 701, 703–704, 109 A.2d 589 (1954).

It is with these principles in mind that this court must examine the defendant's claim that the amount of the verdict is "exorbitant" and unjust in light of all of the evidence. Such a claim raises a question of law. *Vandersluis* v. *Weil,* 176 Conn. 353, 358, 407 A.2d 982 (1978). " 'The issue here is not whether this court would have awarded more or less. It is whether the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to offend the sense of justice and compel a conclusion that the jury [was] influenced by partiality, prejudice or mistake.' *Gorczyca* v. *New York, N.H. & H. R. Co.,* [supra, 703]." *Vandersluis* v. *Weil,* supra.

The defendant argues that "the jury awarded the plaintiff . . . $50,000.00 for several weeks of worry and concern, many times more per week for his worries, than [the plaintiff] would have made at his job had

he performed well enough to keep it" and that "[t]his exorbitant figure can only compel 'the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption.' " While we disagree with the defendant's characterization of the plaintiff's claim as "several weeks of worry"[9] and as "relatively trivial," we do agree that the jury verdict is excessive.[10]

There was evidence before the jury that at the time of his termination, the plaintiff was in need of insurance and that the defendant was aware of this need. At that time, the plaintiff had been suffering from a recurrent ulcer, as well as a problematic dental condition. The defendant knew that he had serious health problems. Additionally, the plaintiff's wife had been enduring a difficult pregnancy and in fact had a complicated delivery two months premature. It is clear from the verdict rendered that the jury concluded that, as a result of the defendant's actions, the plaintiff did suffer mental and emotional distress. There is no claim and no proof, however, of a permanent injury in this case.

Regardless of this evidence, the jury, we conclude, could not reasonably have found that the plaintiff is entitled to recover $50,000.[11] The damage award in this

---

[9] The defendant claims that "[t]he period for which the plaintiff can reasonably claim emotional damages began January 14, 1985, the date by which he had to convert his policy, and ended February 26, 1985, when he realized that his bills would, indeed, be paid: approximately 43 days." At trial, however, the plaintiff testified that he was under the impression that he had no medical coverage from December 15, 1984, until early March, 1985.

[10] The defendant has not pointed to any basis, other than the amount of the award, for a finding that the jury was influenced by "partiality, prejudice, mistake or corruption." Although this court does feel the award was excessive, the excessiveness appears attributable to outrage over the total lack of regard for the rights of the plaintiff which the defendant exhibited in this matter.

[11] The record indicates that the parties agreed for a one third contingency fee arrangement for the plaintiff and the trial court charged the jury that "[i]n this case, reasonable attorney's fees would be based upon one third of the amount that you determine is fair, just and reasonable for an award."

case is so grossly excessive as to shock the conscience of this court; it is impermissibly beyond the limits of legitimate generosity. If the amount determined by the jury "convinces the mind that the verdict is in fact excessive, unjust and entirely disproportionate to the loss sustained [by the plaintiff], it becomes our duty to act." *Lengel* v. *New Haven Gas Light Co.*, supra, 78. We have reached that conclusion after a careful review of the evidence and the record, mindful that a reviewing court will remit excessive damages only "as far as it believed it reasonably could without trespassing upon the prerogatives of the jury." *Allen* v. *Giuliano*, 144 Conn. 573, 578, 135 A.2d 904 (1957). We are aware that this court may not reduce a damage award simply because we, as a factfinder, would have awarded a different amount. We conclude, nevertheless, that consistent with justice, a remittitur must be entered. See, e.g., *Lengel* v. *New Haven Gas Light Co.*, supra, 79; *Gorczyca* v. *New York, N.H. & H. R. Co.*, supra, 706; W. Maltbie, Connecticut Appellate Procedure § 200 and cases there cited. "In the ordering of a remittitur, a fair appraisal of compensatory damages, and not the limit of legitimate generosity, is the rule." *Allen* v. *Giuliano*, supra.

There is error, the judgment is set aside and a new trial is ordered unless the plaintiff, within three weeks from the date when the judgment of this court is rendered, shall file with the clerk of the Superior Court a remittitur of $35,000 of the amount of the verdict; but if such remittitur is filed, judgment shall thereupon as to the balance of the verdict be rendered upon it.

In this opinion the other justices concurred.