[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SET ASIDE VERDICT ANDJUDGMENT NOTWITHSTANDING VERDICT
All of the issues raised by this motion to set aside the verdict were thoroughly addressed at trial.
BREACH OF CONTRACT
The court cannot conclude, based on the evidence presented, that as a matter of law no contract existed between the parties. The court has read the briefs and the employment manual in this case. The manual is unusual in that there is none of the so-called "eschewing" language referred to in Finley v. Aetna Life Casualty, 202 Conn. 190, 199 (ftn. 5) (1987). The disciplinary section of the manual particularly does not emphasize to employees that they are only at will employees and, despite any disciplinary procedure referred to in the manual, they could be let go an at will by the employer. It is in light of this that the actual language of the manual should be read, particularly as to how it would reasonably be interpreted by an employee.
The steps set out for discipline according to the manual "shall serve as a guideline." Every case is individual, says the CT Page 5626 manual, but the next following sentence states: "among thefactors that should be considered in determining the action to betaken are seriousness, frequency and nature of the violation,length of service, work history and customary, disciplinarypractices. The policy outlines the progressive steps of the normal disciplinary process. It must be emphasized, however, that discipline may begin at any step in the procedure depending on the seriousness of the offense." (Emphasis added.) The manual language itself, especially since it contains no eschewing language, is replete with the creation of an obligation on the part of the employer to follow a policy established by ascertainable workplace custom, to determine what is "normal" or "not normal." (See underlined sentence supra.) As stated by the court during trial, the case cited in Finley, Toussant v. BlueCross, 292 S.W.2d 880 (1980) is very instructive — that case makes clear that in these employment manual cases, the ordinary "meeting of the mind," "mutual negotiations," requirements for contract formation are not strictly applicable in the ordinarily understood sense. If as here, an employee is made aware of employer policy through a manual and, as here, there is testimony that the employee did rely on such policy, then the fact of continued loyal employment, which is the very objective of creating such manuals forms the basis of contract formation. Id. page 892.
The mere fact that the manual language here uses the word "individual" and "normal" cannot be pointed out as a marker that any employee would understand as precluding the employee from understanding he had contractual rights under the disciplinary policy. The point is, read as a whole, the manual language leaves open a rational reading that those terms can be defined according to criteria set forth in the manual. (See underlined quoted sentence indicated previously).
It is interesting to note here that employer officers who testified for the defendant understood that pursuant to the manual an employee could not be fired without good cause. This was the "culture" at this workplace that was understood by Mr. Gaudio as an employee and his supervisors. An employer should not be able to enjoy the benefit of worker loyalty hoped to be achieved by issuance of manuals purporting to establish workplace rights then argue no contractual rights were established by pointing to isolated words in the language of the manual which are read out of context. The way an employer can protect itself was laid out quite explicitly in Finley — use clear, CT Page 5627 unambiguous eschewing language denying contractual rights and emphasizing the continuing employee at will status of all workers despite existence of the manual. See Manley v. Blue Cross, CV 91-0322213S (NJ. J.D., 1996).
As to the argument made by the defendant that there was not sufficient evidence of a breach of contract, the court cannot properly grant this motion. There was certainly conflicting evidence as to what happened during this incident and question as to whether this incident was fully and fairly investigated. The court cannot say as a matter of law that, if there was a contract, the jury had no basis on which to find that given the standards set forth in the manual, the employer did not act in an arbitrary and capricious manner.
BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
The court has already declined to set the verdict aside on the grounds that no contract could be found to have existed here.
Given that there was evidence presented that the defendant violated its obligation of good faith and fair dealing. The jury had evidence before from which it could find that an inadequate and capricious investigation was conducted. A risk manager attended the meeting at which it was decided to terminate the plaintiff and he was told by the chief security officer, according to the plaintiff's testimony, that he was being terminated because of fear of a lawsuit. The jury could have reasonably reached these factual conclusions. If it did so, it could then certainly conclude the reason for the termination was pretextual and furtive in nature, consciously depriving the plaintiff of his rights to fair treatment. Buckinan v. People'sExpress, 205 Conn. 166, 171 (1987).
DEFAMATION
The basis of this claim is a termination letter sent to the plaintiff and put in his personnel file. The termination letter's second sentence is in fact defamatory under Connecticut law. The sentence read: "Your (sic) displayed bad judgment and did no follow established procedures regarding restraint of a patient."
In Proto v. Bridgeport Herald Corporation, 136 Conn. 557, 566
(1950), the court said: "It is well settled that a libel is actionable per see if it charges improper conduct or lack of CT Page 5628 skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his (sic) profession or business." See also later case of Moriarty v.Lippe, 162 Conn. 371, 386 (1972). The plaintiff here at the time of his termination was a security guard; he had an interest in making this his career and after this incident sought and obtained work as a police officer. The letter accused him of "bad judgment" and failure to follow "established procedures" regarding patient restraint. This is a sufficient allegation of "improper conduct" and "lack of skill" in the plaintiff's chosen profession to warrant the jury's conclusion that defamation had been established.
Also, based on the conflicting evidence here the jury could conclude the statements made in the letter were not substantially true.
Publication here was satisfied by the fact that the letter was put in the personnel file of the plaintiff. Also, the jury could have concluded that the plaintiff was strongly compelled to publish the defamatory words and it was foreseeable to the defendant that he would do so. Given this, plaintiff's interest in law enforcement and security, which he followed up after his termination from the defendant hospital, it is difficult to see how it could be said that a person interested in this particular line of work would not be compelled to tell prospective employers about the reasons for his termination at a prior security job. The specialized nature of the field the plaintiff worked in allowed the jury to infer that this was reasonably foreseeable to the defendant
The defendant had a right to claim a privilege to the defamation claim. The privilege claim, which the court recognized, could be defeated by a finding of actual malice as that term is defined in the case law. Torosyan v. BoehringerIngelheim Pharmaceutical, 234 Conn. 1, 29 (1995). The jury could have found actual malice here based on the way the investigation was conducted and the presence of a risk manager at the very meeting at which the decision to fire the plaintiff was made. Also, at that meeting various people were not in attendance who might have had important information about the incident. The jury could use this factor to support inferences of malice.
ERRORS IN CHARGE AND EVIDENTIARY RULINGS
CT Page 5629
The court has reviewed the objections made to the court's charge and the rulings on evidence. The court does not find sufficient basis to set aside the verdict based on the arguments made by the defendant. The evidentiary rulings were thoroughly argued at trial.
DAMAGES
The court agrees with the plaintiff's analysis regarding the propriety of the damage award and will not reduce the awards made.
This motion is denied.
Corradino, J.