[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed August 18, 1997
FACTS
The plaintiffs seek to recover from their fire insurance carrier for what they claim is the balance due them under the "Dwelling Protection" coverage on a homeowner's policy. They seek $11,581.34, representing the amount they claim they still owe the contractor who did the repairs to their house after a fire caused severe damage.
The defendant-carrier has asserted a variety of defenses, including that they have paid the claim in full under the policy terms, that the plaintiffs had no valid contract with their contractor, and that the value of the repairs is less than the contract price the plaintiffs rely on.
The plaintiffs have also alleged bad faith on the part of the defendant in its handling of the claim and refusal to pay the claimed loss.
 I
One of the defendant's attacks on the plaintiffs' contract for repairs is based on the theory that the contract is invalid because it fails to comply with the Connecticut Home Improvement Act, Connecticut General Statutes, § 20-418, et seq.
This legislation was enacted to protect consumers from at least some of the perils encountered in dealing with home CT Page 12620 improvement contractors. The court can see no basis to extend this consumer protection to the consumer's insurer so that the consumer's shield can become the insurer's sword. In fact, to accept this application of the Home Improvement Act would serve to insinuate all third-party insurance carriers into the decision making and preparation of countless personal transactions, with mind boggling implications. Such a policy would certainly be a great boost for court business!
 II
The defendant questions the validity of the repairs contract on other grounds, arguing, for example, that the various documents comprising the alleged contract are vague and so imperfectly drafted as to suggest the plaintiffs and the contractor were participating in a series of pretenses, all designed to defraud the defendant. They support this premise with reference to the inept efforts by the contractor to secure a lien for the balance allegedly owed him.
Unfortunately, the principal in the contracting firm who executed the documents in question died before trial, and there is no recorded explanation for the actions criticized by the defendant.
While the "contract" in question does not carry a detailed listing of price per item, the work to be performed is described; and there is an agreed upon price. This court has been obliged to decide cases with much more infirm documentation, and while there is room for disagreement between the contracting parties as to specifics, the fact remains that the plaintiffs are not
contesting the terms of the contract. They agree the contractor did his job and is entitled to payment of the balance.
The court rejects the defendant's claim that the plaintiffs and the contractor were involved in a conspiracy of some sort to collect the balance of the claim.
 III
Another attack on the contract by the defendant is based by its theory that the plaintiffs cannot recover the balance due (which it describes as "withheld depreciation") because they have not "incurred a debt" or "actually spent" an amount that includes the balance claimed. This requirement apparently has its origin CT Page 12621 in language of the policy which purports to describe how replacement cost payments are to be determined:
5. How We Pay For a Loss
Building Structures
 Payment for covered loss to building structures insured under the Dwelling Protection coverage will be by one of the following methods:
 a) Replacement Cost. This means there will not be a deduction for depreciation.
 Payment will not exceed the smallest of the following amounts:
 1) the replacement cost of that part of the building structure damaged for equivalent construction and use on the same premises;
 2) the amount actually and necessarily spent to repair or replace the damaged building structure; or
 3) The limit of liability applicable to the building structure.
 We will not pay more than the actual cash value of the damaged building structure until the repair or replacement is completed.
 b) Actual Cash Value. This means there may be a deduction for depreciation.
The defendant argues that paragraph 2 above is relevant to the issues in this dispute, though the court finds the language puzzling in its literal application. Is the defendant suggesting the insured must spend the money for repairs before he is then considered for reimbursement? One must question how much protection a policy affords if this term applies as written.
Accepting the defendant's position as briefed, the court will interpret the requirement to be that the plaintiffs must show they have incurred a debt; i.e., become obligated to pay an CT Page 12622 amount certain.
Having concluded the defendant cannot rely on the Home Improvement Act and that it has not proved the contract to be fraudulent in its purpose, the court concludes that, on the evidence presented, the plaintiffs "became obligated" to pay the contract price of $74,724.00,
In its argument that this contract did not obligate the plaintiffs, the defendant ignores the fact that in litigation on this contract between the plaintiffs and their contractor, recovery could well be based on quantum meruit, even assuming contractual infirmities. This suggests another reason why the carrier cannot be permitted to control its insured and control litigation.
The defendant also argues that the plaintiff is seeking to recover withheld depreciation "without having to perform any conditions." It cites Orosco v. Allstate Ins. Co., 8 CONN. L. RPTR. 117 (Conn.Super. 1992) (Hodgson, J.), for the proposition that such payment may be properly withheld until replacement is complete.
The plaintiffs' response is that they have seen the contract for work completed and would like to receive full payment.
In the course of this trial, the court heard from the defendant as to how claims are handled when withheld depreciation is involved. The claims adjuster stated that frequently withheld depreciation is released without the execution of a contract for repairs, before the work is done, and on the basis of an estimate.
On cross examination, he stated this payment was withheld because of the Home Improvement Act which the court has addressed above. He went on to say that there was "confusion as to documentation," that is, the work done and that listed in the contract do not match up. But, he assured the court, he did not require the repairs to be precisely as the house was before.
The representative of the contractor took exception to the testimony suggesting that the work completed was not of the prior quality or that additional work was outside the scope of the loss. CT Page 12623
While these witnesses stated their basic disagreements, the court was not treated to specific items and dollar amounts to evaluate this defense. The defense witness gave a round number of $20,000 as the amount by which the contract price exceeded the fire loss work performed. This testimony was disputed and specific examples elaborated upon. A discrepancy between the amount of the contract and the amount stated on the building permit was also addressed by both parties, but the court does not find this evidence probative of the major issue.
Considering all the evidence and the explanations offered, the court concludes that plaintiffs have sustained their burden on this disputed issue. The defendant has not presented sufficient evidence to show that only $54,000 worth of work was done toward correcting the fire damage.
 V
The court reserved decision on the defendant's motion to dismiss the plaintiffs' count claiming bad faith.
The plaintiffs have not presented, nor do the facts present "a design to mislead or deceive . . ." or "a neglect or refusal to fulfill . . . some contractual obligation not prompted by an honest mistake as to rights or duties." Buckman v. PeopleExpress, Inc., 205 Conn. 166, 171 (1987).
The bad faith claim is denied.
CONCLUSION
Judgment may enter for the plaintiffs to recover the withheld depreciation in the amount of $10,315.90 (the plaintiff's brief ignores the $250 deductible for which the defendant is entitled to a credit).
As for the plaintiffs' claim for interest, the defendant argues there was no evidence from them as to when the sum in question became "due and owing." The defendant overlooks its own Exhibit No. 1, a general release from the plaintiffs to the defendant in which they reserve their rights under the policy to pursue this claim. This release is dated May 12, 1993 and was followed 15 days later by a check from the defendant to the plaintiffs for $59,408.10 (Exhibit F). CT Page 12624
The plaintiffs are awarded interest at the legal rate of 10 percent per annum on the judgment of $10,315.90. To the date hereof, that amount is calculated to be $4,401.49.
The plaintiffs are entitled to their taxable costs.
DeMayo, S.T.R.