[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE
The court must determine whether to strike the second, fifth and-sixth counts of the plaintiff's amended complaint on the grounds that the plaintiff has failed properly to state legal claims upon which relief can be granted because the plaintiff (1) has not met the necessary standard for asserting a claim that the covenant of good faith and fair dealing was breached, (2) cannot make a tortious inference with contract claim against a defendant who is not a third party to a contract that has been breached, (3) has not pleaded facts sufficient to satisfy CUTPA's "cigarette rule," and (4) has failed to allege a CUTPA claim because CUTPA requires the allegation of more than a single act by the defendant against a single party.
The plaintiff, E.T. Krolikowski's complaint includes counts against two defendants, General Electric Capital Assurance Company (General Electric) and American Express Travel Related Services Company, Inc. (American Express).[1] General Electric has moved to have the second, fifth and sixth counts of Krolikowski's complaint stricken. In order, these counts claimed that General Electric breached the implied covenant of good faith and fair dealing, tortiously interfered with contract rights, and violated the Connecticut Unfair Trade Practices Act (CUTPA).
Krolikowski alleges the following. During February of 1995, Krolikowski responded to a promotion by the Fireman's American Life Insurance Company (Fireman's American) for life insurance that was being marketed through American Express. Krolikowski then submitted an application for life CT Page 6858 insurance for the amount of $100,000. This application was accepted on April 1, 1995, and Fireman's American issued a written contract of life insurance.
Fireman's American was the insurer in this agreement, but the premiums on Krolikowski' s life insurance were being charged to his American Express card, and then paid by Krolikowski as part of his overall credit card bill. According to Krolikowski, this application stated that American Express would keep advancing the premiums that were due until it was notified in writing by Krolikowski that he wanted such advances stopped. American Express paid the premiums from April 1, 1995 though June 1, 1998, when American Express stopped advancing the insurance premiums without Krolikowski's knowledge or consent.
At some time after Fireman's American accepted Krolikowski's application, General Electric became the successor to Fireman's American's interest and received the premiums advanced by American Express. In February of 1999, Krolikowski became aware that his monthly American Express card statements did not include a charge for his life insurance premiums. When he contacted General Electric, Krolikowski was told that General Electric had, without his knowledge or permission, advised American Express that it should stop advancing the monthly premium. Premiums had not been paid after June of 1998, and General Electric terminated the plaintiff's life insurance policy after this date. When Krolikowski sought to have the canceled life insurance policy reinstated, General Electric refused to reinstate this life insurance policy and accept any more premiums for this policy.
General Electric moves to strike the second, fifth and sixth counts of Krolikowski's amended complaint on the following grounds. Krolikowski fails sufficiently to allege a breach of the implied covenant of good faith and fair dealing. He fails adequately to allege a claim for tortious interference with a contract in that he did not claim General Electric engaged in any tortious conduct, and in that General Electric is not a stranger to the contract. He fails sufficiently to allege a violation of CUTPA in that his allegations fail to satisfy the "cigarette" rule, and he fails to allege more that one act so as to constitute an unfair practice.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. . . . [W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If the facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted). Peter-Michael,CT Page 6859Inc. v. Sea Shell Associates, 244 Conn. 269, 270-271, 709 A.2d 558
(1998).
 I.
Breach of the Implied Covenant of Good Faith and Fair Dealing
Krolikowski alleges the following material facts in the second count. The application for life insurance "stated that [Krolikowski] understood and agreed that [American Express] would continue to advance the premiums due until notified in writing by [Krolikowski] to cancel the authorization to advance the premium for said insurance." When Krolikowski first became aware that his monthly card statements did not include a charge for life insurance and he inquired into this matter, "he was apprised that [General Electric], had, without [Krolikowski's] knowledge or permission, advised [American Express] to no longer advance the monthly premium and seek reimbursement from [Krolikowski], and since [Krolikowski] was unaware of this arrangement, the premiums had not been paid after June of 1998 and [General Electric] discontinued the insurance coverage." Finally "[u]pon learning of this fact, [Krolikowski] sought reinstatement of said insurance policy, but [General Electric] has refused to reinstate the policy and refuses to accept from [Krolikowski] the premiums as they become due." General Electric argues that Krolikowski's second count should be stricken because it "does not contain any allegations of evil motive, furtive design or ill will."
As General Electric admits, Connecticut does recognize "an independent cause of action in tort arising from an insurer's common law duty of good faith." Buckman v. People Express, Inc., 205 Conn. 166, 170, 530 A.2d 596
(1987). "Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." (Internal quotation marks omitted.) Gupta v. New Britain GeneralHospital, 239 Conn. 574, 598, 687 A.2d 111 (1996). "An implied covenant of good faith and fair dealing has been applied by [the Supreme Court] in a variety of contractual relationships, including . . . insurance contracts. . . ." (Citations omitted.) Buckman v. People Express, Inc.,
supra, 205 Conn. 170.
"Bad faith means more than mere negligence; it involves a dishonest purpose." Gupta v. New Britain General Hospital, supra, 239 Conn. 598. "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." (Citations omitted; internal quotation marks omitted.) Habetz v.CT Page 6860Condon, 224 Conn. 231, 237, 618 A.2d 501 (1992).
This court has previously stated in Ryan v. Allstate Indemnity Co.,
Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 142573 (September 22, 1998, D'Andrea, J.), that "`bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.'" Id., quoting Buckman v. People Express, Inc., supra,205 Conn. 171 (recording trial court's jury instructions, which the Supreme Court did not find erroneous). The claim "must be alleged in terms of wanton and malicious injury, evil motive and violence for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interest of others." (Internal quotation marks omitted.) Saint Francis Hospital Medical Center v. DeCaro,
Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 705814 (December 9, 1996, Wagner, J.T.R.). General Electric quotes the "evil motive and violence" language as the standard to follow, while Krolikowski quotes cases that contain an exclusive version of the "dishonest purpose" language.
"The allegations of a complaint subject to a motion to strike are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if facts provable under its allegations would support . . . a cause of action, the motion to strike must fail." (Internal quotation marks omitted.) Faulkner v. UnitedTechnologies Corp., 240 Conn. 576, 588, 693 A.2d 293 (1997). If the facts alleged have "the sound of a dishonest purpose," this allegation of misconduct is what matters, not mere legal conclusions that the defendant acted in bad faith. Brouillard v. United Illuminating Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 418595 (June 1, 1999, Silbert, J.).
This court finds that alleging dishonest purpose is sufficient when claiming a breach of the covenant of good faith and fair dealing. While the "evil motive and violence" language contains some terms that could suggest a rigid conduct standard, e.g., "wanton and malicious injury, evil motive and violence," placed in context, these phrases overlap with, and include, the "dishonest purpose" standard, which describes acts simply done with a bad motive. Alintah v. National Grange, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 146571 (April 24, 1997, D'Andrea, J.) (allegations of delay, and unfounded accusations by insurance company during claim settlement); see also Saint Francis Hospital Medical Center v. Decaro, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 705814 (December 9, 1996, Wagner, J.T.R.) (allegations of misrepresentation, CT Page 6861 improper denial, delay and unfairness in claim settlement).
The court holds that Krolikowski has pleaded sufficient facts to allege that General Electric acted with dishonest purpose. He alleges that American Express surreptitiously breached the contract without informing him as required, that they were doing so. He has alleged facts sufficient to show that General Electric acted with dishonest purpose and ratified this intent by discontinuing and later refusing to reinstate this life insurance policy. General Electric's motion to strike the second count of the plaintiff's complaint is denied.
 II.
Tortious Interference with Contract Rights
In his fifth count, Krolikowski alleges that General Electric tortiously interfered with his contract rights damaging him in the process. "[I]t is well-settled that the tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two other parties." (Emphasis in original.)Wellington Systems, Inc. v. Redding Group, Inc., 49 Conn. App. 152, 168,714 A.2d 21 (1998), cert denied, 247 Conn. 905, 720 A.2d 516 (1999). "[T]here can be no intentional interference with contractual relations by someone who is directly or indirectly a party to the contracts."Multi-Service Contractors, Inc. v. Vernon, 193 Conn. 446, 451, 477 A.2d 653
(1984). A third party is "[o]ne not a party to an agreement or to a transaction but who may have rights therein." Black's Law Dictionary, (5th Ed. 1979). See also Elliot v. Sears, Roebuck Co., 229 Conn. 500,508, 642 A.2d 709 (1994).
In this instance, American Express, General Electric, and Krolikowski were parties to both an agreement and a transaction in which Krolikowski paid General Electric for a life insurance policy through his American Express premiums. All parties were obligated to perform under this contract, so none of the three could claim to be a third party to this agreement. Without a third party to inflict damage upon the contractual relationship, the plaintiff has no intentional interference claim. The only exception to this doctrine comes when an agent acts outside the scope of his duty and improperly uses corporate power for personal gain. See Wellington Systems, Inc. v. Redding Group, Inc., supra,49 Conn. App. 168. Because only American Express and not General Electric could possibly be described as an agent under the facts of this case, this exception is not relevant. The fifth count of the plaintiff's complaint is therefore stricken.
 III
CT Page 6862
CUTPA Claim
General Electric argues that Krolikowski has not pleaded facts in the sixth count sufficient to satisfy the "cigarette rule," and that the plaintiff is not protected by CUTPA because he has only alleged a single incident and not an ongoing practice. Krolikowski argues, in response, that he has alleged more than a simple breach of contract, that the facts alleged demonstrate a violation of public policy, and that a single act may give rise to a CUTPA violation.
General Statutes § 42-110b (a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110g (a) further provides that "[a]ny person who suffers any ascertainable loss of money or property . . . as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages." It was also "the intention of the legislature that this chapter be remedial and be so construed." General Statutes § 42-110b (d).
Connecticut Courts have adopted "the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other business persons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . ."Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334,368, 736 A.2d 824 (1999).
"[A] violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA." (Citations omitted; internal quotation marks omitted.) Willow Springs Condominium Assn., Inc. v. Seventh BRTDevelopment Corp., 245 Conn. 1, 43, 717 A.2d 77 (1998).
The first prong of the cigarette rule is that the practice must offend public policy "as it has been established by statutes, the common law, or otherwise." Hartford Electric Supply Co. v. Allen-Bradley Co., supra,250 Conn. 368. The breach of the covenant of good faith and fair dealing requires a public policy violation. See id. It was established above that CT Page 6863 Krolikowski's alleged facts were sufficient to support his claim for the breach of the covenant of good faith and fair dealing. General Electric's alleged conduct therefore meets the first prong of the cigarette rule, which requires a public policy violation.
Krolikowski has alleged that he signed an application for life insurance which stated that American Express would advance premiums that were due on this policy unless American Express was notified in writing by Krolikowski that he wanted such advances stopped. According to Krolikowski, General Electric told American Express to stop advancing the monthly premium and and canceled his life insurance policy without informing him that they were telling American Express to stop advancing the premium. General Electric did not inform Krolikowski that it was canceling his life insurance policy, and refused to reinstate his policy when asked.
These allegations of unscrupulous behavior are similar to those made in analogous cases: Mynahan v. Prudential Ins. Co. of America, Superior Court, judicial district of Waterbury, Docket No. 132774 (April 8, 1998,Espinosa, J.) (defendant improperly failed to deduct premiums from payroll, failed to notify plaintiff its policy was about to lapse, and misinformed the plaintiff by telling him that his policy was still in effect); Greenwich Roofing Sheet Metal Works, Inc. v. Golden O'Neill Gebhardt, Inc., Superior Court, judicial district of Stamford, Docket No. 152859 (September 26, 1996, Mintz, J.) (17 Conn.L.Rptr. 653, 654) ("defendant held itself out as a specialist, was a long-term insurance broker of the plaintiff, undertook to advise, counsel and obtain for the plaintiff the insurance needed by the plaintiff to adequately protect its property, and the defendant breached its agreement and its duty by failing to obtain insurance as basic as fire insurance"). See also Josephv. Hannan Agency, Inc., Superior Court, judicial district of Danbury, Docket No. 323310 (January 9, 1997, Moraghan, J.) (18 Conn.L.Rptr. 552, 553-54) (defendant insurer accepted premiums, informed plaintiffs that workers' compensation insurance had been obtained, issued certificates of insurance to the plaintiffs, and never provided them with this insurance); Nygaard v. Metropolitan Property Casualty Co., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 151924 (April 7, 1997, Karazin, J.) (defendant represented to plaintiffs that their fire insurance policy was in effect when he knew or should have known insurer did not intend to issue this policy and in fact did not issue this policy). Based on this alleged conduct, and prior existing case law, General Electric's actions violated the second prong of the cigarette rule for the purposes of alleging a legally sufficient cause of action.
The third prong of this rule requires that the plaintiff allege that CT Page 6864 the defendant's actions caused substantial injury. See Hartford ElectricSupply Co. v. Allen-Bradley Co., supra, 250 Conn. 368. The Plaintiff has claimed that he "suffered an ascertainable loss." Although the Plaintiff is required to claim ascertainable loss in order to meet a threshold barrier for CUTPA; Service Road Corp. v. Quinn, 241 Conn. 630, 638,698 A.2d 258 (1997); satisfying this requirement does not automatically satisfy the third prong of the cigarette rule.[2]
To meet the third criterion of the cigarette rule, "[1] [the injury] must be substantial; [2] it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and [3] it must be an injury that consumers themselves could not reasonably have avoided." (Internal quotation marks omitted.) Hartford Electric SupplyCo. v. Allen-Bradley Co., supra, 250 Conn. 368. There is no way to infer from the allegations that General Electric's practice produced any benefits to consumers or provided a countervailing benefit to competition. The facts in the plaintiff's amended complaint also fail to show any way the plaintiff consumer could have avoided injury. The plaintiff has, however, failed to allege that his injury was substantial. Because the court cannot infer from the amended complaint any measure of the injuries sustained, it cannot draw any conclusions beyond that an ascertainable injury took place. The plaintiff does not therefore, meet the third prong of this standard.
The plaintiff has satisfied the first and second prongs of the cigarette rule. "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Hartford Electric Supply Co. v. Allen-BradleyCo., supra, 250 Conn. 368. This court holds that the degree to which the plaintiff has met the first two prongs, has allowed it to satisfy the cigarette rule.
General Electric argues there is no CUTPA liability for individual acts, and supports this by referring to the language of General Statutes § 42-110b (b). General Electric argues that the plural terms of "acts" and "practices" in the statute forbid the application of CUTPA to any defendant who does not act in the same manner "each time" they are faced with the same situations. This court has already noted that "there is a split of authority within the superior court as to whether a single act can be a violation of CUTPA. The majority of superior court decisions . . . have held that a litigant does not need to allege more than a single act of misconduct in order to bring an action under CUTPA." (Citations omitted; internal quotation marks omitted.) Giacomo v. UnitedStates Fidelity Guaranty Ins., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 164760 (September 10, 1998, CT Page 6865D'Andrea, J.). This court therefore concludes, once again, that "a single act is sufficient to support a CUTPA claim." Id.
General Electric also argues that the plaintiffs' CUTPA claim should be rejected because this is a "run of the mill" breach of contract action and therefore is not covered by CUTPA. General Electric's alleged actions, however, were more than a simple, intentional, contract breach. The complaint alleges that General Electric acted in a deceptive manner by telling American Express not to forward the plaintiff's premiums without telling the plaintiff of this action, and then refusing to reinstate the plaintiff's policy when he found out about General Electric's action on his own. The allegation of a deceptive act makes a contract breach actionable under CUTPA. See Phillips Industrial ServiceCorp. v. Connecticut Light Power Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 409665 (March 22, 1999, Levin, J.);Gianetti v. Greater Bridgeport Individual Practice Assn., Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 355718 (February 2, 1999, Nadeau, J.).
The defendant General Electric's motion to strike is denied as to the second and sixth counts of the plaintiff's amended complaint and granted as to the fifth count of this complaint
D'ANDREA, J.