[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT (No. 116)
I. INTRODUCTION.
The motion for summary judgment now before the court arises from an insurer's alleged delay in adjusting a fire loss. For the reasons briefly stated below, the motion must be granted.
The evidence submitted to the court establishes that in 1998 the plaintiffs, Michael and Anna Ormsby, owned and resided in a home in Seymour. The home was insured by the defendant, Nationwide Mutual Fire Insurance Co. ("Nationwide"). On August 18, 1998, the home was seriously damaged by fire. The Ormsbys filed a claim for fire loss with Nationwide, and the co-defendant, Russell Goodspeed, a claims adjuster with Nationwide, was assigned to the case. The day after the fire, Goodspeed issued the Ormsbys a check for $2,500 as an advance to pay for necessary expenses. He later issued additional advances.
The Ormsbys hired a public adjuster, John Ranciatto, Jr., to negotiate with the defendants. Over the next few months, Goodspeed and Ranciatto disagreed as to the amount of the Ormsbys' loss. They ultimately agreed upon a figure that was substantially less than Ranciatto's initial demand.
The Ormsbys' policy required them to submit to Nationwide a "signed, sworn proof of loss." (Policy Condition 2.e.) The policy provided that CT Page 17340 payment was to be made within 60 days after receipt of the proof of loss and either an "agreement" between the parties, the entry of a final judgment in a lawsuit, or the filing of an appraisal award. (Policy Condition 9.) In this case, as mentioned, there was an agreement between the parties.
On January 4, 1999, the Ormsbys submitted a signed, sworn proof of loss in which they agreed that the cash value of their building was $72,690.11. On January 18, 1999, Nationwide issued them a check in that amount. On July 15, 1999, the Ormsbys submitted a signed, sworn proof of loss in which they agreed that the whole loss and damage for the personal property in their home was $25,000. Nationwide had previously given the Ormsbys $10,000 of this amount in cash advances. On July 21, 1999, it issued them a check for the remaining $15,000. Nationwide subsequently paid the Ormsbys additional sums (although not as much as the Ormsbys requested) for replacement costs, living expenses, and cleaning costs. Nationwide's various payments to the Ormsbys ultimately totaled $160,516.16.
On August 20, 1999, the Ormsbys commenced this case against Nationwide and Goodspeed by service of process. Their second amended complaint of June 5, 2000 (there is, confusingly, an earlier — and now superceded — pleading, also entitled "second amended complaint," in the file), consists of five counts. Count One alleges a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. §42-110a, et seq., against Nationwide. Count Two alleges a CUTPA violation against Goodspeed. Count Three alleges a breach of the implied covenant of good faith and fair dealing against Nationwide. Count Four alleges the intentional infliction of emotional distress against Goodspeed. Count Five alleges the intentional infliction of emotional distress against Nationwide.
On October 15, 2001, Nationwide filed the motion for summary judgment now before the court. The motion was argued on December 17, 2001. The Ormsbys' causes of action must now be considered in turn.
II. CUTPA.
Counts One and Two, alleging CUTPA violations, can be dealt with swiftly. It is well established that, in order to establish a CUTPA violation against an insurance company, a plaintiff must first establish a violation of the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn.Gen.Stat. § 38a-815, et seq. Mead v. Burns, 199 Conn. 651,663, 509 A.2d 11 (1986). The Ormsbys do not dispute this rule, and they duly allege a CUIPA violation here. It is also well established, however, "that a claim under CUIPA predicated upon alleged unfair claim CT Page 17341 settlement practices in violation of § 38a-816 (6) requires proof that the unfair settlement practices were committed or performed with such frequency as to indicate a general business practice." Lees v.Middlesex Insurance Co., 229 Conn. 842, 847-48, 643 A.2d 1282 (1994). (Citation and internal quotation marks omitted.) The Ormsbys, however, concededly offer no evidence showing a "general business practice." Their failure to offer such evidence "fatally flaws" their claim. HeymanAssociates No. 1 v. Insurance Co., 231 Conn. 756, 798 n. 30, 653 A.2d 122
(1995).
The defendants' motion for summary judgment must consequently be granted as to Counts One and Two.
III. BAD FAITH.
Count Three alleges a breach of the implied covenant of good faith and fair dealing against Nationwide. "[T]he implied duty of good faith and fair dealing is a covenant implied into a contract or contractual relationship." Hoskins v. Titan Value Equities Group, Inc., 252 Conn. 789,793, 749 A.2d 1144 (2000). "The essence of the implied covenant is that neither party to a contract will do anything to injure the right of the other to receive the benefits of the contract." Cates Construction, Inc.v. Talbot Partners, 980 P.2d 407, 415 (Cal. 1999). This duty specifically applies to insurance contracts. Buckman v. People Express, Inc.,205 Conn. 166, 171, 530 A.2d 596 (1987).
It is well established that to establish a breach of the implied covenant of good faith and fair dealing, the plaintiffs must show bad faith. Bad faith requires "a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or contractual obligation not prompted by an honest mistake as to one's rights or duties. . . . [It] is not simply bad judgment or negligence, but rather . . . the conscious doing of a wrong because of dishonest purpose or moral obliquity."Buckman v. People Express, Inc., supra, 205 Conn. at 171.
The evidence submitted by the parties, viewed in the light most favorable to the plaintiffs, gives no glimmering of this factual predicate. There was a delay of approximately four and a half months between the time of the fire and the time that the parties reached an agreement as to the value of the building. Another six and a half months expired before the parties reached an agreement as to the value of the personal property. But reach an agreement they did. The Ormsbys had the right under their policy to submit a signed, sworn proof of loss in the amount of their choice and either demand an appraisal or take appropriate legal action. (Policy Conditions 5 7.) They did neither. They instead agreed upon a compromise figure, and that amount was readily paid. This CT Page 17342 is not a bad faith scenario. The essence of a claim of bad faith in this context would necessarily be that the insurer, for some dishonest purpose, evaluated the plaintiffs' loss in a manner that a reasonable insurer would not do. An agreement between the parties on the amount of the loss and the insurer's prompt payment of that amount plainly negates such a claim.
There is some evidence that after payment of the plaintiffs' final proof of loss, there was some lingering disagreement between the parties concerning some replacement costs, living expenses, and cleaning costs. This disagreement looms rather small in the context of the entire controversy, and the plaintiffs did not even allude to this in argument. Their focus, instead, is on the initial period of four and a half months between the August 18, 1998 fire and the January 4, 1999 proof of loss. That delay, if such it was, is simply too thin a reed to support a claim of bad faith in this case. See Neal v. State Farm Fire Casualty Co.,908 F.2d 923, 926 (11th Cir. 1990).
"[E]ven with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." Wadia Enterprises,Inc. v. Hirschfeld, 224 Conn. 240, 250, 618 A.2d 506 (1992). The plaintiffs have not presented the necessary factual predicate for their argument here. For this reason, the motion for summary judgment must be granted as to Count Three.
IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.
Counts Four and Five allege the intentional infliction of emotional distress. Although the Ormsbys have submitted an imposing compilation of depositions assertedly substantiating this allegation, those materials, upon careful inspection, bring to mind Gertrude Stein's famous description of Oakland, California. There is no there there.
The Orrmsbys claim ultimately boils down to their contention that the defendants were slow and uncooperative in settling their claim and that Goodspeed was "cold, rude, [and] uncaring." This last observation is entirely conclusory in nature. There is no evidence that Goodspeed made any untoward gesture or utterance of any description.
One of the elements of the tort of intentional infliction of emotional distress is "that the conduct was extreme and outrageous." Appleton v.Board of Education, 254 Conn. 205, 210, 757 A.2d 1059 (2000). (Citation and internal quotation marks omitted.) "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially for the court to determine." Id. Appleton sets a high CT Page 17343 threshold for the court:
 Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, "Outrageous!". . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.
Id. at 210-11. (Citations and internal quotation marks omitted.)
The submitted evidence, even when construed in the light most favorable to the plaintiffs, fails to establish the requisite degree of outrage. At most, the plaintiffs can point to conduct which a trier of fact could find to be "merely insulting or dislay[ing] bad manners or result[ing] in hurt feelings." That is simply not enough to meet the test of Appleton.
For this reason, the motion for summary judgment must be granted as to Counts Four and Five.
V. CONCLUSION.
The motion for summary judgment is granted.
Jon C. Blue Judge of the Superior Court
womens set of tools one extension ladder Gardening tools Grill Lawn mower stays with house Pots Pans Dishes, table ware baking dishes etc Some of the liquor Jewelry Silverware, inherited CT Page 17344 2 clocks Picnic basket 2 filing cabinets Toaster Utility Ladder (3 or 4 step) for the house Either the new refrigerator or the freezer
Other things like ironing boards, suitcases, etc all belong to one or the other of us by usage.