## SYLVIA N. CLINTON *v.* AETNA LIFE AND SURETY COMPANY

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 325312S
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed April 23, 1991

*Brady, Willard & Alexander,* for the plaintiff.

*Regnier, Taylor, Curran & Langenbach,* for the defendant.

SATTER, J. The plaintiff has sued the defendant insurance company for attorney's fees and expenses incurred to defend a claim that the plaintiff asserts was covered by the defendant's policy.

The facts are as follows. The plaintiff, a Connecticut resident, dealt with a Connecticut broker to obtain insurance coverage for her Florida rental property. An apartment package policy was issued to the plaintiff by the defendant's Florida agent. It contains a Florida amendatory windstorm or hailstorm endorsement and provides that if the terms of the policy conflict with the statutes of the state where issued (Florida) they "are hereby amended to conform to such statutes."

The policy consists of eighteen single spaced, typewritten pages containing many technical terms, definitions, exclusions and cross-references. On page thirteen it provides: "The Company will pay on behalf

of the insured all sums which the insured shall become legally obligated to pay [in] damages because of *personal injury* . . . sustained by any person or organization and arising out of the named insured's business . . . and the Company shall have the right and *duty* to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations by the suit are groundless, false or fraudulent . . . ." (Emphasis added.) Personal injury is defined to include an injury arising out of "wrongful entry or eviction or other invasion of the right of private occupancy."

The policy also provides for an exclusion with respect to "any injury arising out of an act committed by the insured with actual malice."

In March, 1985, the plaintiff initiated a summary process action against her tenant, Francis Wakefield, for possession of an apartment claiming, inter alia, that Wakefield allowed persons not in the original lease to reside on the premises. A person residing with Wakefield at that time was Patricia Leggett. Wakefield filed a counterclaim to the effect that the plaintiff had refused to add Leggett to the lease because Leggett was black and, as a consequence, the plaintiff was liable for damages under the United States Civil Rights Act, 42 U.S.C. § 1982, and the Florida anti-discrimination statute, Fla. Stat. § 760.23 (1985). On the same day, Leggett started a similar civil rights suit against the plaintiff, alleging that "[i]n refusing to add Patricia A. Leggett to the lease, the Defendant [the plaintiff in the present case] has acted intentionally and maliciously and in wanton and wilful disregard of the rights and feelings of Patricia A. Leggett."

The plaintiff notified the defendant of these pending actions and requested that the defendant defend her. The defendant wrote to the plaintiff that there were serious questions as to its obligation to indem-

nify the plaintiff on some of the claims against her, however, it would defend the plaintiff so long as the Wakefield and Leggett actions were consolidated. In August, 1985, the Wakefield counterclaim was dismissed and, on August 26, 1985, the defendant notified the plaintiff that it would no longer defend the Leggett case. The plaintiff thereupon retained the lawyer who had brought the original summary process action. In December, 1985, final judgment was rendered in the plaintiff's favor in the Leggett matter. In connection with that case, after the lawyer provided by the defendant withdrew, the plaintiff incurred legal fees of $3169, and mail, telephone and travel expenses of $1682, for a total of $4851.

The threshold issue is which state's law governs. The plaintiff requested the policy through a Connecticut agent in Connecticut. The policy was issued in Florida, however, and contains Florida endorsements. The policy specifically provided that it was to conform to Florida law, and, most important, it covered Florida property. In *Breen* v. *Aetna Casualty & Surety Co.*, 153 Conn. 633, 637, 220 A.2d 254 (1966), the Supreme Court said: "The general rule is that the validity and construction of a contract are determined by the law of the place where the contact was made. But if the contract is to have its operative effect or place of performance in a jurisdiction other than the place where it was entered into, our rule is that the law of the place of operative effect or performance governs its validity and construction."

In light of that authority, this court concludes that the law of Florida governs the present case. With an exception later alluded to, however, counsel have not pointed to any significant difference between Florida and Connecticut law on the issues involved here, nor has the court found any.

The court starts its interpretation of the policy with the well established principle that ambiguous words or phrases in an insurance policy are construed strictly against the insurance company and in favor of coverage. *McCauley Enterprises, Inc.* v. *New Hampshire Ins. Co.,* 716 F. Sup. 718 (D. Conn. 1989); 2 G. Richards, Law of Insurance (6th Ed. Freedman 1990) § 11.2 (f), pp. 250–51. The test of coverage is not what the insurer intended to cover but what a reasonable person in the position of the insured would understand to be covered. *Gardner* v. *Romano,* 688 F. Sup. 489, 491 (C.D. Wis. 1988). "The court will look toward the insured's objectively reasonable expectations which will be honored even if a 'painstaking study of the policy provisions would have negated those expectations.' " G. Richards, supra, § 11.2 (g), p. 252.

The substantive issue in the present case is whether or not the policy obligates the defendant to defend the plaintiff in the Leggett racial discrimination case.

The duty to defend is both separate and distinct from, and broader than, the duty to indemnify. *Martin* v. *Brunzelle,* 699 F. Sup. 167, 168 (N.D. Ill. 1988); *Gardner* v. *Romano,* supra. "An insurer may not refuse the tendered defense of an action unless a comparison of the policy with the underlying complaint shows on its face that there is no potential for coverage. . . . In making the comparison any ambiguous or equivocal expressions in the policy will be strictly construed against the insurer." *Solo Cup Co.* v. *Federal Ins. Co.,* 619 F.2d 1178, 1183 (7th Cir. 1980); W. Shernoff, S. Gage & H. Levine, Insurance Bad Faith Litigation (1989) § 3.21 (1), pp. 3-49–3-55. This is consistent with the Florida rule that a complaint is sufficient to invoke the duty to defend when it alleges at least marginally and by reasonable implication conduct within the coverage of the policy. *Klaesen Bros., Inc.* v. *Harbor Ins. Co.,* 410 So. 2d 611, 613 (Fla. App. 1982).

The operative phrase defining "personal injury" as including an injury arising out of "wrongful entry or eviction or *other invasion of the right of private occupancy*"; (emphasis added); is a common provision in apartment house policies. No Florida court, however, has construed it. Courts of other jurisdictions have differed as to whether or not this provision covers claims of racial discrimination against owners of rental property. In *Larson* v. *Continental Casualty Co.*, 377 N.W.2d 148, 150 (S.D. 1985), the court held that the phrase was unambiguous and did not encompass racial discrimination claims. In *Martin* v. *Brunzelle,* supra, 170, the court held that the phrase, following "wrongful entry and eviction," was intended to cover only actions of that general nature and, moreover, was limited to situations of a landlord-tenant relationship between the person claiming discrimination and the insured.

On the other hand, *State Farm Fire & Casualty Co.* v. *Westchester Investment Co.*, 721 F. Sup. 1165, 1168 (C.D. Cal. 1979), held that the operative phrase did embrace racial discrimination claims and those brought by prospective as well as actual tenants. Similarly, *Goshen* v. *Grange Mutual Ins. Co.*, 120 N.H. 915, 917–18, 424 A.2d 822 (1980), broadly construed the phrase to cover a civil rights act suit against a town alleging that its planning board's actions created an economic hardship and denied the plaintiff enjoyment of his property without due process of law.

The best reasoned and most frequently cited case is *Gardner* v. *Romano,* supra, which holds that the phrase, "other invasion of the right of private occupancy" requires the insurer to defend a racial discrimination claim by a prospective tenant against the insured. Id., 492. Finding the phrase not so much ambiguous as vague, the court states: "Construing this vague policy language against the drafter, the court concludes that

[insurer] has not met its burden of showing that the claims at issue here are clearly beyond the policy coverage. Moreover, the court is persuaded that interpreting the 'personal injury' definition to include claims for race discrimination by potential tenants comports with the reasonable expectations of the insureds, keeping in mind that the insureds are entitled to the benefit of the doubt on the duty to defend issue." Id., 493.

In the present case, Leggett, an occupant of the plaintiff's premises, brought a civil rights action against the plaintiff alleging that the plaintiff had refused to add her to Wakefield's lease because Leggett was black. This court finds that such an action comes fairly within the coverage of the defendant's policy and required the defendant to defend the plaintiff in that action.

The defendant asserts, as a defense, that the policy excludes "any injury arising out of an act committed by the insured with actual malice." This defense is without merit on two grounds. First, the exclusion implies a finding that the insured acted with actual malice. In the present case, the Leggett matter was decided in the plaintiff's favor and the plaintiff took a judgment. Second, the Leggett complaint alleged that the plaintiff acted "intentionally and maliciously and in wanton and wilful disregard" of Leggett's rights and feelings. These are separate and distinct claims. Intentionally and wilfully means purposefully and knowingly. See *State* v. *DeJesus,* 194 Conn. 376, 383, 481 A.2d 1277 (1984). Wantonly means recklessly, in disregard of the rights of others, but without the intent to harm. See *Dubay* v. *Irish,* 207 Conn. 518, 532–33, 542 A.2d 711 (1988). Maliciously means with deliberate intent to injure. See *Groton* v. *Medbery,* 6 Conn. Cir. Ct. 671, 673, 301 A.2d 270 (1972). The law is clear that when a complaint alleges several causes of action or theories of recovery against the insured, one of which is within the coverage of the policy, a duty on the part of the

insurer to defend arises. *Martin* v. *Brunzelle,* supra, 168; *Maryland Casualty Co.* v. *Peppers,* 64 Ill. 2d 187, 193–94, 355 N.E.2d 24 (1976). Thus, the policy exclusion does not protect the defendant in the present case.

Finally, the defendant asserts that Florida's public policy prohibits the plaintiff from being indemnified for a loss resulting from an intentional act of discrimination. *Ranger Ins. Co.* v. *Bal Harbour Club, Inc.,* 549 So. 2d 1005 (Fla. 1989), cited by the defendant, so holds. The reasoning of that case is that insurance indemnification runs counter to the public interest to deter religious and racial discrimination. The present case, however, involves the duty of the defendant to defend such a claim, which, as it turned out, was meritless. As pointed out earlier, the duty to defend is distinct from the duty to indemnify. Interposing a defense to a racial discrimination claim does not violate the public policy of Florida. *Ranger Ins. Co.* v. *Bal Harbour Club, Inc.,* supra, is, therefore, not apposite.

Judgment may enter in favor of the plaintiff against the defendant for $4851, together with statutory interest from August 26, 1985, the date when the defendant notified the plaintiff it would no longer defend her.