[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT #101 DEFENDANT'S MOTION FOR SUMMARY JUDGMENT #110 DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT
From approximately 1968 to 1980, The Olson Brothers Company, now R.E.O., was in the business of manufacturing precision parts and screw machine products at 272 Camp Street, Plainville, Connecticut (the site). During at least this period of time, The Olson Brothers Company purchased comprehensive general liability insurance (CGL) policies from the defendant, the Travelers Companies (Travelers).
On or about November 16, 1982, The Olson Brothers Company entered into an asset agreement with JJetsal, Inc. whereby JJetsal and New Cambridge Realty purchased substantially all of The Olson Brothers Company's assets and the site. Pursuant to this agreement, JJetsal, Inc. took on the trade name, "The Olson Brothers Company." On December 17, 1982, the former The Olson Brothers Company changed its name to R.E.O., Inc., pursuant to a CT Page 6682 filing with the Connecticut secretary of state. December 17, 1982, the former The Olson Brothers Company changed its name to R.E.O., Inc., pursuant to a filing with the Connecticut secretary of state.
Under the terms of the asset agreement, R.E.O., Inc. agreed to "indemnify and hold Buyer harmless from any and all loss or additional expense resulting from any misrepresentation or breach of warranty. . . ."[1] On or about July 31, 1992, the Olson Brothers Company and New Cambridge (the underlying plaintiffs) initiated an action in the United States District Court, District of Connecticut entitled, The Olson Brothers Co. and New CambridgeRealty v. The Olson Brothers Realty Corp. and R.E.O., Inc. (the underlying action), alleging that hazardous substances were found at and around the site, including in the groundwater of the state of Connecticut. The underlying plaintiffs' complaint alleged among other things, the following:
1. "[H]azardous waste and contamination was found in the soils on the Site. Said substances are hazardous pursuant to42 U.S.C. § 9601(14) and General Statutes § 22a-115."
2. Olson, as owner and operator of the Site, "allowed or permitted [hazardous substance] to be released to the environment."
3. "As a result of the [contamination], (the underlying plaintiffs) will continue to incur response costs within the meaning of 42 U.S.C. § 9601, for the costs [which Olson] is liable."
4. "The contaminants found on the site were the result of the discharge, spillage, uncontrolled loss, seepage or filtration of oil or petroleum or chemical liquids, solid or gaseous products."
5. The "contamination [at the Site] occurred due to the negligence or other actions" of Olson.
6. "As a result of [the plaintiffs'] negligent and reckless misconduct, (the underlying plaintiffs) have been injured in that they have incurred costs of removal and remediation of the contamination at the Site."
7. "The conduct of [the plaintiffs] unreasonably polluted, impaired or destroyed the public trust in the water or other CT Page 6683 natural resources of the state or is reasonably likely do so, in violation of Conn. Gen. Stats. Section 22a-16."
8. Olson "allowed an unpermitted discharge of hazardous substances into the environment, including without limitation, the waters of the state in violation of Chapters 445 and 446K of the Connecticut General Statutes and 42 U.S.C. § 6901 and Section 9601, and the regulations promulgated thereunder."
9. Olson "is strictly liable for the hazardous substances and wastes that leaked, seeped, spilled or had been otherwise discharged in or onto the Site."
The underlying plaintiffs engaged in a cleanup of the contamination at and around the site as they were legally obligated to do pursuant to 42 U.S.C. § 1901 (14) (CERCLA)[2] and General Statutes § 22A-115. They alleged that the contamination existed prior to the execution of their respective asset and site purchase agreements and they sought reimbursement for their clean up costs.
By letter dated October 27, 1992, the plaintiffs in the present action requested that the defendant Travelers, their insurer, defend and indemnify them in the underlying action. By letter dated November 19, 1992, the defendant indicated that it could not determine its defense obligation to the plaintiffs as it was still in the process of obtaining and reviewing the applicable policies. It instructed the plaintiffs "to do that which is necessary to protect [plaintiffs'] own interest." The plaintiffs reached a settlement with the underlying plaintiffs on February 12, 1993, agreeing to compensate the underlying plaintiffs for cleanup costs incurred because of the property damage by replacing the promissory notes issued to the underlying plaintiffs at the time they purchased the site with new promissory notes of lower value.
By letter dated September 14, 1993, the defendant informed the plaintiffs that it had neither an obligation to defend nor a duty to indemnify "The Olson Brothers Company and/or The Olson Brothers Realty." The plaintiffs then filed this complaint on March 31, 1995, alleging that the defendant breached its insurance-contract in refusing to pay defense costs and to indemnify the plaintiffs (count one); that the defendant engaged in unfair or deceptive acts or practices in the business of insurance in violation of General Statutes § 38a-815 (CUIPA) CT Page 6684 and General Statutes § 42-110b (CUTPA) (count two); and that the defendant breached the covenant of good faith and fair dealing as it failed to "exercise the utmost good faith in all dealings with [the] [p]laintiffs" (count three). The defendant filed an answer and special defenses asserting that it had no duty to defend or indemnify the plaintiffs for the following reasons: (1) the existence of a settlement agreement (first, second, and third special defenses); (2) the policies' exclusion for owned, occupied, or rented property (fourth special defense); (3) the policies' exclusion for alienated property (fifth special defense); (4) the policies' exclusion for liability assumed by the insured (ninth special defense); (5) the policies' exclusion for damage not arising out of an occurrence (eleventh special defense); (6) the policies' pollution exclusion (twelfth special defense); (7) the policies' exclusion for known losses (eighteenth special defense).
The plaintiffs have moved for summary judgment (#101) on the ground that there is no genuine issue as to any material fact and that they are therefore entitled to judgment as a matter of law. They argue that (1) the defendant breached its contract duties in failing to provide the plaintiffs with a defense in the underlying plaintiffs' action against them; and that (2) the defendant's failure to provide a defense triggered its duty to indemnify the plaintiffs-for their settlement costs in-the underlying action. In addition, while the plaintiffs' motion does not specifically address its count three claim for breach of the covenant of good faith and fair dealing, their supplemental memorandum in support of their motion for summary judgment argues that the defendant handled their claim in bad faith.[3]
The defendant filed its own motion for summary judgment (#110) contending that it does not have a duty to pay defense or indemnity costs incurred by the plaintiffs in the settlement with the underlying plaintiffs as (1) the property damage occurred either before the defendant provided coverage to the plaintiffs; or (2) the property damage was to property owned, occupied or alienated by the insureds, the present plaintiffs, and thus is excluded by the policies' provisions.
The defendant also filed a "cross motion for summary judgment"[4] in which it argues in support of its motion that it had no duty to defend and thus no duty to indemnify the present plaintiffs in the underlying action as the underlying plaintiffs were under no legal obligation to evaluate, remove, CT Page 6685 analyze or dispose of the contaminated soil. Thus, it contends, the underlying plaintiffs' damages were incurred voluntarily, and the instant plaintiffs are not legally liable for the underlying plaintiffs' damages.
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. . . ."Thompson and Peck, Inc. v. Division Drywall, Inc., 241 Conn. 370,374, 696 A.2d 326 (1997); Home Ins. Co. v Aetna Life CasualtyCo., 235 Conn. 185, 202, 663 A.2d 1001 (1995); Practice Book § 384, now Practice Book (1998 Rev.) § 17-49.
"A `genuine' issue has been variously described as `triable,' `substantial' or `real' issue of fact . . . and has been defined as one which can be maintained by substantial evidence. . . . Hence, the `genuine issue' aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred. . . . A `material' fact has been defined adequately and simply as a fact which will make a difference in the result of the case. . . . `Issue of fact' encompasses not only evidentiary facts in issue but also questions as to how the trial court would characterize such evidentiary facts and what inferences and conclusions it would draw from them." Craftsmen, Inc. v. Young,18 Conn. App. 463, 465, 557 A.2d 1292 (1989), citing United OilCo. v. Urban Redevelopment Commission, 158 Conn. 364, 378-79,260 A.2d 596 (1969).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." Home Ins. Co. v. Aetna Life andCasualty, supra, 235 Conn. 202. Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. . . . (Citations omitted; internal quotation marks omitted.) Id., citing Water Way Properties v.Colt's Mfg. Co., 230 Conn. 660, 664-65, 646 A.2d 143 (1994). "To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." Connecticut National BankCT Page 6686v. Great Neck Development Co., 215 Conn. 143, 148, 574 A.2d 1298
(1990), quoting State v. Goggin, 208 Conn. 606, 616-17,546 A.2d 250 (1988). "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." HomeIns. Co. v. Aetna Life Casualty Co., supra, 235 Conn. 202-03.
"Where there is no question of fact or law which remains to be answered . . motion for summary judgment should be granted. If the sole question is one of law, it [can] be properly determined on a motion for summary judgment." (Citations omitted.) Schlottv. Zaremski, 32 Conn. Sup. 567, 568-69, 345 A.2d 588 (1975).
The Plaintiffs' Motion for Summary Judgment
 Count 1: Breach of the Insurance Contract
A. Duty to Defend
The plaintiffs argue that, as a matter of law, the defendant's duty to defend is triggered when the allegations of the applicable complaint fall even possibly within coverage. The defendant contends that the plaintiffs have failed to make out a prima facie case for failure to defend and indemnify because the plaintiffs have failed to submit the contracts of insurance. In addition, the defendant argues that the plaintiffs' motion fails to address, and therefore, fails to negate, the factual issues which the defendant raises in its answer and special defenses. Specifically, the defendant asserts as a special defense that a settlement agreement exists between the parties and thus, the plaintiffs' claims for a defense and indemnification are barred. The defendant also asserts as a special defense that the policy language excludes coverage for damage to property owned or alienated by the insured, and that it also excludes coverage for liability which the insured assumes by contract or agreement. The defendant argues further that the plaintiffs' motion must fail because a factual issue exists as to whether the plaintiffs transferred the subject policies to the underlying plaintiffs by the asset agreement, and it points to specific provisions of the asset agreement which state that "all assets" were transferred "except those excluded."
Finally, the defendant argues that the plaintiffs' motion is premature as it was filed two weeks after the return date, and prior to the time allowed for the defendant's responsive pleading. The defendant argues that as a result, it was not CT Page 6687 afforded adequate time to conduct discovery upon factual issues raised by the plaintiffs' complaint and the defendant's answer and special defenses.
"Whether the . . . defendant ha[s] a duty to defend the [original] action depends on whether the complaint in the action state[s] facts which appear to bring [the plaintiff's] claimed injury within the policy coverage." Schwartz v. Stevenson,37 Conn. App. 581, 585, 657 A.2d 244 (1995), citing Missionaries ofCo. of Mary. Inc. v. Aetna Casualty Surety Co., 155 Conn. 104,110, 230 A.2d 21 (1967). "If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (Emphasis in the original.) City ofWest Haven v. Liberty Mutual Ins. Co., 639 F. Sup. 1012, 1017 (D. Conn. 1986), citing Lee v. Aetna Casualty Surety Co.,178 F.2d 750 (2d Cir. 1949)(Hand, J.). "If the complaint states different causes of action or theories of recovery against the insured and one such cause is within the coverage of the policy, the insurer is bound to defend the whole suit." Schurgest v. Schuman,156 Conn. 471, 490, 242 A.2d 695 (1968).
"The duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured. "Missionaries of Co. of Mary, Inc.v. Aetna Casualty Surety Co., supra, 155 Conn. 110. Thus, "when an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and further, that the allegations in toto, are subject to no other interpretation." (Emphasis in the original.)State of N.Y. v. Amro Realty Corp., 936 F.2d 1420, 1427 (2d Cir. 1991), cited in Berdon v. Chicago Title Ins. Co. Inc., Superior Court, judicial district of New Haven, at New Haven, Docket No. 304940, (April 23, 1996, Burns, J.).
In Schwartz v. Stevenson, supra, 37 Conn. App. 586, the Appellate Court affirmed the trial court finding that the third party defendant insurer had a duty to defend its insured who had been sued for negligently operating a vehicle. The insurer argued that the insured failed to plead the nonexistence of policy exclusions: the policy covered injuries incurred through the operation of a non-owned vehicle and the original complaint contained no allegation as to the ownership of the subject vehicle. CT Page 6688
In upholding the insurer's duty to defend, the court reasoned that the appropriate test for an insurer's duty to defend was whether the "allegations of the complaint fairly state facts that appear to bring the injury complained of within the coverage." Id. The court went on to conclude that "the complaint need not negate each and every exclusion within a policy in order to trigger a contractual obligation to defend [as it was] the allegations on the face of the complaint that govern the duty to defend." Id.
In City of West Haven, supra, 639 F. Sup. 1017, the district court found that the defendant insurance company had a duty to defend its insured, City of West Haven, in several workmen' s compensation actions even where the underlying claims were ambiguous and thus not obviously within the policy's coverage: the claimants sought coverage for injuries covered under workmen's compensation law, requiring insurance coverage, as well as under two other statutes, only one of which was within the workmen's compensation law. Id., 1014. The workmen's compensation commission ordered the city to pay the claims, but did not indicate under which statutes the awards were made. Despite the claims' ambiguity, the court found that the insurance company had a duty to defend the city "because the claims were unquestionably at least potentially within the policy coverage." (Emphasis added.) Id., 1017. See Schwartz v. Stevenson, supra,37 Conn. App. 585-86 ("If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured."); Clinton v. Aetna Life Surety Co.,41 Conn. Sup. 560, 563, 594 A.2d 1046 (1991) (applying Florida law) (finding that a complaint is sufficient to invoke the duty to defend when it alleges[,] at least marginally and by reasonable implication[,] conduct within the coverage of the policy. Thus, the insurer had a duty to defend a racial discrimination claim by a tenant against the landlord-insured who refused to renew a lease, as such refusal was within the policy's personal injury coverage for "invasion of the right of private occupancy."); Palace Laundry Co. v. Hartford Accident andIndemnity Co., 27 Conn. Sup. 222, 230, 234 A.2d 640 (1967) (finding that the insurance company had a duty to defend the plaintiff for "although the allegations of the complaint on the issue of bodily injury caused by accident are possibly gossamer thin, there was at least the possibility that the plaintiff . . . would prove that the nervous condition . . . resulted from the continued vibrations of the machinery on the laundry premises");Travelers Indemnity Co. v. Dingwell, 414 A.2d 220, 226 (Me. 1980) CT Page 6689 ("Precision is not required in the complaint, and it is not necessary for determining a duty to defend. The correct test is whether a potential for liability within the coverage appears from whatever allegations are made.") (Emphasis in the original.)[5]
Thus, the plaintiffs are correct in their argument that the defendants had a duty to defend them in the underlying action because "the complaint . . . state[s] facts which appear to bring [the plaintiff's] claimed injury within the policy coverage."Schwartz v. Stevenson, supra, 37 Conn. App. 585, citingMissionaries of Co. of Mary, Inc. v. Aetna Casualty Surety Co.,
supra, 155 Conn. 110. The insuring agreement section of the policies states that:
A. (1) Travelers agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of (a) bodily injury; or (b) propertydamage . . . caused by an occurrence . . . and The Travelers shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury orproperty damage. (Emphasis added.)
E.(14) "Occurrence" means an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage neither expected nor intended from the standpoint of the Insured . . .
(16) "Property damage" means (a) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." (Emphasis in the original.)
The underlying complaint against the plaintiffs pleads within the policies coverage by alleging property damage to the state's water supply: "hazardous substances [were discharged] into the environment, including . . . the waters of the state. . . . "[6] The underlying complaint also satisfies the policy provision requiring that such damage result from an occurrence that was an "accident, including continuous or repeated exposure to a condition not expected or intended," for the underlying complaint alleges that it occurred as a result of the plaintiffs' CT Page 6690 "negligent and reckless misconduct." The underlying action, "filed in court"[7] and brought by the underlying plaintiffs against the plaintiffs is patently a suit within the policy language. Finally, the underlying plaintiffs sought "money damages including all of the costs incurred and to be incurred for removal and remediation of the contamination at the site" as a result of the plaintiffs' "negligent and reckless misconduct." Such a claim is consistent with the definition of damage: as "pecuniary compensation for loss, detriment or injury." Dinapoliv. Cooke, 43 Conn. App. 419, 427, 682 A.2d 603, cert. denied, ___ U.S. ___, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1996).[8]
The defendant incorrectly suggests that the plaintiffs, because they have failed to submit the contracts of insurance, have also failed to make out a prima facie case for failure to defend and indemnify. The plaintiffs have submitted a letter in which Travelers admits that it insured the plaintiffs[9] by comprehensive general liability policies for the applicable period from November 30, 1969 to November 30, 1980. The letter quotes the insuring agreement sections of the policies, which define the circumstances under which the defendant insurer's duty to defend is triggered. By comparing the allegations in the underlying complaint with the coverage sections of the insurance policies quoted in the letter, it is apparent that there is ample evidence that the defendant had a duty to defend the plaintiffs in the underlying action. Missionaries of Co. of Mary. Inc. v.Aetna Casualty Surety Co., supra, 155 Conn. 110-11. Moreover, the defendant itself has provided this court with a copy of the applicable policy provision in Exhibit D annexed to its own memorandum in support of its cross motion for summary judgment. The scope of the policy coverage identified in the defendant's Exhibit D is identical to the coverage identified in the plaintiffs' Exhibit C, the defendant's letter. As the defendant's exhibit was submitted as part of the overall instant summary judgment motions, it may properly be considered in support of the plaintiffs' motion for summary judgment.
The defendant is also incorrect in its argument that the piaintiffs' claims for defense and indemnification are barred because a settlement agreement exists between the parties. Practice Book § 381, now Practice Book (1998 Rev.) § 17-46, requires "supporting and opposing affidavits . . . be made on personal knowledge . . . sett[ing] forth such facts as would be admissible in evidence, and . . . [showing] affirmatively that the affiant is competent to testify to the matters stated CT Page 6691 therein." The defendant submitted an affidavit by Vernyce M. McDonald, a Travelers' associate account manager, who averred that (1) she engaged in numerous written and oral discussions with the plaintiffs' counsel which culminated in a settlement agreement between the parties wherein the plaintiffs "release[d] and discharge[d] Travelers from all liability upon [the] claims, [consideration for which Travelers agreed to pay] $23,655"; and that (2) "in early November, 1994, [she] was advised that the plaintiffs would not honor the settlement." This affidavit alone insufficient to show affirmatively that there is a genuine issue of material fact as to the existence of a settlement agreement. Viewed in a light most favorable to the non-movant, the affidavit would seem, at most, to evidence McDonald's mere belief that an agreement had been reached. As to the first averment, the defendant has failed to present the court with a copy of any signed settlement agreement contract. "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court." Home Ins. Co. v. Aetna Life CasualtyCo., supra, 235 Conn. 202. The second averment is more problematic as it constitutes hearsay not within any exclusion and is therefore inadmissible. See United Services AutomobileAss. v. Marburg, 46 Conn. App. 99, 107, ___ A.2d ___ (1997).[10]
The defendant is likewise incorrect in arguing that it has no duty to defend and indemnify the plaintiffs because the claimed damage falls within the policies' exclusion (1) for damage to property owned or alienated by the insured; and (2) for liability which the insured assumes by contract or agreement.[11] "[W]hen an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the allegations of the complaint cast the pleading solely and entirely within the policy exclusions. . . ." Berdon v. Chicago Title Ins. Co., Inc.,
supra, Superior Court, Docket No. 304940, citing State of N.Y. v.Amro Realty Corp., supra, 936 F.2d 1427. The underlying complaint alleges among other things, that the plaintiffs (1) "allowed an unpermitted discharge of hazardous substances into the environment, including . . . the waters of the state in violation of Chapters 445 and 446 of the Connecticut General Statutes and42 U.S.C. § 6901 and Section 9601 . . ."; (2) that contamination [at the site] occurred due to the negligence or actions of [the plaintiffs]"; and (3) that the plaintiffs are "strictly liable as the hazardous substances and wastes that leaked, seeped, spilled or had been otherwise discharged in or onto the Site." CT Page 6692
The defendant here has failed to demonstrate that the allegations of the underlying complaint against the plaintiffs cast the pleading solely and entirely within the policy exclusions. The underlying complaint alleges damage to property not owned or alienated by the insureds as it alleges damage to state property: its water supply. See Gerrish Corp. v. UniversalUnderwriters Ins. Co., 947 F.2d 1023, 1030 (2d Cir. 1991), cert. denied, 504 U.S. 973, 112 S.Ct. 2939, 119 L.Ed.2d 564 (1991) (finding that insurer's owned property exclusion did not bar coverage as damage alleged was to neighboring property, to a drainage stream, and to the Ottauquechee River); Intel Corp. v.Hartford Accident Indemn. Co., 952 F.2d 1551, 1565 (9th Cir. 1991)("Damage to groundwater is not damage to property owned or occupied by or rented [to the insured]."); Vann v. TravelersCo., 39 Cal.App.4th 1610, 1618, ___ P.2d ___,46 Cal.Rptr.2d 617, 622 (Cal.App. 1 Dist. 1995) ("Allegations of potential groundwater contamination may reasonably be read to include concerns for off-site contamination and such allegations are thus not necessarily limited to property occupied or controlled by [the insured property owner]."); AIU Ins. Co. v. Superior Courtof Santa Clara County, 51 Cal.3d 807, 799 P.2d 1253,274 Cal.Rptr. 820, 836 (1990)("Release of hazardous waste into groundwater and surface water constitutes actual harm to property in which the state and federal governments have an ownership interest."); Polkow v. Citizens Ins. Co. of America, 180 Mich. App. 651,447 N.W.2d 853, 857 (Mich.App. 1989), rev'd on other grounds, 438 Mich. 174, 476 N.W.2d 382 (1991) (as groundwater is not the property of the owner, but rather, [is the property of] the state, "we hold that the alleged contamination . . . falls outside of the policy exclusion for damage to the insured's own property. . . . We hold that these allegations are essentially for injury to the public interest in the well being of the environment and natural resources of the state."); Upjohn Co. v.New Hampshire Ins. Co., 178 Mich. App. 706, 444 N.W.2d 813, 819
(Mich.Ct.App. 1989), rev'd on other grounds, 438 Mich. 197,476 N.W.2d 392 (1991) ("We note that the improper release of toxic wastes may cause property damage not only to the actual owner of the land, but also to the government because of its independent interest, behind the titles of its citizens, in the air and earth (i.e., its natural resources) within its domain."); Stone Webster Management Consultants, Inc. v. Travelers Indem. Co., No. 94-6619, 1996 U.S. Dist. LEXIS 4852, at *12 (S.D.N.Y. April 15, 1996) ("[T]he property exclusion relied on by Travelers might exclude coverage for property damage on the . . . site . . . but CT Page 6693 the exclusion does not bar coverage for the off-site damage caused to the soil, sediment and groundwater in the Chattahoochee River."); Riehl v. Travelers Ins. Co., No. 83-0085, 1984 U.S. Dist. LEXIS 24515, at *8 (W.D. Pa. August 8, 1984), rev'd on other grounds, 722 F. Sup. (3rd Cir. 1985) ("surface and sub-surface water on the plaintiff's land is not property owned by the insured plaintiff within the meaning of the instant policies; exclusions and consequently coverage is provided for damages to the waters of the Commonwealth of Pennsylvania . . ."); F.L.Smidth Co. v. The Travelers Ins. Co., 292 N.J. Super 483,679 A.2d 170, 174 (N.J.Super. A.D. 1996) ("[G]round water contamination is not excluded by the "owned property" exclusion in CGL policies.).[12]
The defendant has likewise failed to demonstrate that the allegations of the underlying complaint cast the pleadings solely and entirely within the policy exclusion for liability which the insured assumes by contract or agreement. The purchase agreement provision which the defendant argues defeats coverage provides as follows: seller (plaintiffs) agrees to "indemnify and hold buyer (underlying plaintiffs) harmless from any and all loss or additional expense resulting from an, misrepresentation or breach of warranty. . . ." The underlying complaint fails to allege that the plaintiffs engaged in either innocent misrepresentation or fraudulent misrepresentation and there is only one count in the underlying complaint (count seven) which pleads within the contract exclusion or liability which the insured assumes by contract. The underlying complaint raises claims under the following theories of recovery: strict liability environmental law (counts one, four, five); negligence (count two); negligence and recklessness (count three); strict liability (common law) (count six); breach of contract (warranty deed) (count seven); and violation of CUTPA (count eight). Thus, only count seven pleads within the contract exception provision. Where a complaint "states different causes of action or theories of recovery against the insured, and [even] one such cause is within the coverage of the policy but others may not be within such coverage, the insurer is bound to defend those which, if proved, are within the coverage." (Emphasis added.) Schurgast v.Schumann, supra, 156 Conn. 490; Clinton v. Aetna Life SuretyCo., supra, 41 Conn. Sup. 565.
The defendant is not persuasive in its argument that the plaintiffs' motion for summary judgment should be denied because an issue of fact exists as to whether the insurance policies were CT Page 6694 transferred to the underlying plaintiffs by the asset agreement. The defendant has failed to meet its burden as a party opposing summary judgment; it neglected to present this court with "an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Gupta v. New Britain General Hospital,
supra, 239 Conn. 582. Instead, the defendant offers this court its interpretation of several of the asset agreement provisions, but "[m]ere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court." Home Ins. Co.v. Aetna Life Casualty Co., supra, 235 Conn. 202. In contrast, the plaintiffs presented the court with the affidavit of Arlene H. Olson, a former corporate officer of R.E.O. and Olson Brothers Realty Corporation (the plaintiffs), wherein she avers that the plaintiffs "did not intend to and did not transfer any rights to its Travelers' insurance policies."[13]
The defendant's argument that the plaintiffs' motion for summary judgment should be denied because the defendant has not had an adequate opportunity to conduct discovery as to any material issue of fact is without merit. Pursuant to Practice Book § 389, now Practice Book (1998 Rev.) § 17-44, "any party may move for summary judgment at any time . . . except that the party must obtain the judicial authority's permission to file a motion for summary judgment after the case has been assigned for trial." The plaintiffs did not file their motion for summary judgment prematurely. "A party [may oppose] a summary judgment motion pursuant to Practice Book § 382, now Practice Book (1998 Rev.) § 17-47 on the ground that more time is needed to conduct discovery, [but such party] bears the burden of establishing a valid reason why the motion should be denied or its resolution postponed, including some indication as to what steps that party has taken to secure facts necessary to defeat the motion." Peerless Ins. Co. v. Gonzalez, 241 Conn. 476, 488,697 A.2d 680 (1997). In this case, the defendant has failed to provide an affidavit explaining why it has been unable to conduct discovery and what steps it has taken to secure facts necessary to defeat this motion. It merely asserts in its argument, in a conclusory fashion, that more time is needed. Thus, there is no genuine issue of material fact as to the defendant's duty to defend the plaintiffs in the underlying action. The underlying complaint state[s] facts which bring [the plaintiffs'] claimed injury within the policy coverage, and the defendant has failed to demonstrate that the allegations of the complaint cast the pleadings solely and entirely within the policies' exclusions. CT Page 6695
B. The Duty to Indemnify
The plaintiffs also argue that the defendant had a duty to indemnify the plaintiffs in the underlying action. The plaintiffs assert that as a matter of law, the defendant's duty to indemnify was triggered when it breached its duty to defend. They argue that as a result of the breach, the defendant is under a duty to indemnify them for the costs they incurred in settling the underlying action. The defendant, in response, makes essentially the same arguments with regard to the duty to indemnify as it did with respect to the duty to defend.
"When an insurer is requested by its insured to defend, the insurer must exercise its judgment as to what is required of it under its contractual obligation to its insured. It [can] either refuse to defend or it [can] defend under a reservation of its right to contest coverage under the various avenues which would subsequently be open to it for that purpose. . . . Where an insurer is guilty of a breach of its contract to defend, it is liable to pay to the insured not only his reasonable expenses in conducting his own defense but, in the absence of fraud or collusion, the amount of a judgment obtained against the incurred up to me limit of liability fixed by its policy." (Citations omitted; internal quotations omitted.) Keithan v. MassachusettsBonding Ins. Co., 156 Conn. 128, 139, 267 A.2d 660 (1970); seeAlderman v. Hanover Ins. Group, 169 Conn. 603, 612, 363 A.2d 1102
("We conclude that the defendant's unjustified breach [of the duty to defend] entitled the plaintiff to recover the costs of investigation and legal fees incurred in settlement of the claim against the plaintiff, in addition to me amount of settlement.");[14] Schurgast v. Shumann, supra, 156 Conn. 490
(finding that the insurer had a duty to indemnify as it breached its duty to defend its insured; therefore, the court refused to reach the defendant insurer's argument that the policy excluded coverage n considering the indemnity issue); Missionaries ofMary, Inc. v. Aetna Cas. Sur. Co., supra, 155 Conn. 114 ("The defendant having, in effect waived the opportunity which was open to it to perform its contractual duty to defend under a reservation of its right to contest the obligation to indemnify the plaintiff, reason dictates that the defendant should reimburse the plaintiff for the full amount of the obligation reasonably incurred by it."); Firestine v. Poverman, 388 F. Sup. 948,950 (D. Conn. 1975) ("If the insurer chooses not to defend, and if a court later finds that the insurer did have a duty to CT Page 6696 defend, the insurer will be liable to reimburse him for the cost of his defense and to pay the damages for which its insured was found liable, up to the policy limits, whether or not it might have had a good defense to the claim that it had a duty to indemnify." (Emphasis in the original.)
The plaintiffs are therefore correct in contending that as a matter of law, the defendant's breach of its duty to defend triggered its duty to indemnify the plaintiffs in the underlying action. The plaintiffs' motion for summary judgment on count one is therefore granted. As a matter of law, they were entitled to a defense as the underlying complaint claimed damages within the policies' coverage. The defendant's breach of that duty to defend triggered its duty to indemnify the plaintiffs for the costs they incurred in settlement.
Count 2: Violation of CUTPA and CUIPA
The plaintiffs allege in count two of their complaint that the defendant engaged in unfair or deceptive acts or practices in the business of insurance in violation of both CUTPA and CULPA. The plaintiffs have, however, failed to brief their count two claim in their summary judgment motion. "Claims mentioned but not adequately briefed are deemed abandoned." Pie Plate. Inc. v.Texaco. Inc., 35 Conn. App. 305, 315, 645 A.2d 1044 (1994). Moreover, the plaintiffs in their complaint have provided only a series of legal conclusions unsupported by anything that could be characterized as undisputed facts that would entitle them to judgment on these counts as a matter of law. See Miller v. UnitedTechnologies Corp., 233 Conn. 732, 745 (1995); Katz v.Rubenstein, 201 Conn. 39, 48 (1986). See also Novametrix MedicalSystems, Inc. v. BOC Group, Inc. 224 Conn. 210, 215 (1992); Meadv. Burns, 199 Conn. 651, 663-66 (1986). Summary judgment on count two is therefore denied.
Count 3: Breach of the Duty of Good Faith and Fair Dealing
The plaintiffs move for summary judgment on count three, their claim for breach of the covenant of good faith and fair dealing, contending that the defendant breached the covenant by "disregarding black-letter insurance law" in relying on "facts extrinsic to the four corners of the complaint" in making their coverage determination. They also argue that the defendant breached its good faith duty by denying coverage on non-meritorious grounds: (1) that the policies exclude coverage for CT Page 6697 damage to land; (2) that the policies exclude coverage for the costs of excavations, grading, and filling; and (3) that the policies exclude coverage for the underlying plaintiffs' damage as it occurred before the underlying plaintiffs took ownership of the property. They also claim that the defendant has breached its duty by asserting inapplicable special defenses in its answer to the plaintiffs' complaint: (1) the policies' pollution exclusion; (2) the policies' occurrence exclusion; (3) the existence of a settlement agreement between the parties; and (4) the policies' known loss exclusion.
In addition, the plaintiffs argue that the defendant breached its good faith duty by waiting for over a year to disavow its duty to defend. In this regard, the plaintiffs assert that such delay was unnecessary as the defendant's duty to defend is properly evaluated by comparing the underlying complaint with the language of the policies. The plaintiffs argue that the defendant's asserted reason for the delay — that it could not locate the policies even after ten months — is unavailing, as the defendant had only to request copies from storage. Finally, the plaintiffs assert that the defendant's "bad faith claims handling misconduct is a part of its routine pattern and practice in mishandling environmental claims."
The defendant presented no arguments in opposition to the plaintiffs' motion on the issue of the defendant's breach of the covenant of good faith and fair dealing.
"An implied covenant of good faith and fair dealing has been applied by this court in a variety of contractual relationships including insurance contracts." (Ellipses omitted.) Beckman v.People Express, Inc., 205 Conn. 166, 171, 530 A.2d 596 (1987). "Good faith and fair dealing mean an attitude or state of mind denoting honesty of purpose, freedom from intention to defraud and generally speaking, means faithfulness to one's duty or obligation and an honest intention not to take an [unconscionable] advantage of another." (Ellipses omitted.) Id. "Bad faith is defined as the opposite of good faith generally implying a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by, an honest mistake as to one's rights or duties. . . . [Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity, it contemplates a state of mind affirmatively operating with furtive design or CT Page 6698 ill will." (Citations omitted; ellipses omitted; internal quotation marks omitted.) Id. See Warner v. Konover,210 Conn. 150, 156, 553 A.2d 1138 (1989) (finding that plaintiff stated a cause of action for breach of the duty of good faith and fair dealing where defendant landlord conditioned the assignment of a commercial lease upon a substantial increase in rent to be paid during the unexpired term of the old tenant's lease even where assignee had impeccable credentials); Beckman v. People Express,Inc., supra, 205 Conn. 166 (upholding a trial court finding that defendant insurer's refusing to provide its former employee with insurance extension despite his right under General Statutes 38-262d, and despite several requests by employee and his attorney, was in bad faith); Maher v. Connecticut Ins. Placement Facility,40 Conn. Sup. 299, 304-05, 494 A.2d 63l (1985) (defendant insurer's "failure to inform the plaintiff [insured] of the denial of his claim until the anniversary date of the [subject] fire raises questions of fact regarding the defendant's exercise of good faith").[15]
 In State Farm Fire Casualty Co. v. Simmons, 857 S.W.2d 126,137 (Tex.App. 1993), the Court of Appeals affirmed the trial court finding of bad faith on the part of the insurer who denied coverage for fire damage to its insured. In seeking coverage under its fire insurance policy, the appellees fully cooperated with its insurer, including authorizing the disclosure of whatever financial information its insurer would need in investigating its claim.
In setting out the insured's burden of proof on its bad faith claim, the court reasoned that: it was "incumbent upon the insureds to show the absence of a reasonable basis for denying or delaying payment of the benefits of the policy." (Internal quotation marks omitted.) Id., 133, quoting Aranda v. Ins. Co. ofNorth America, 748 S.W.2d 210, 213 (Tex. 1988). "The first element of the test requires an objective determination of whether a reasonable insurer under similar circumstance would have delayed or denied the claimant's benefits." State Farm Fire Casualty Co. v. Simmons, supra, 857 S.W.2d 133. "The insured must prove the insurer knew or should have known there was not a reasonable basis for denying the claim or delaying payment." Id. The court found that the insurer breached its duty of "pursuing a thorough, systematic, objective, fair, and honest investigation of the claim prior to denying such claim" by indulging in an outcome oriented investigation in which information was obtained and interpreted selectively, so as to identify the insureds as CT Page 6699 the only possible arsonists. Id., 131. See Thomas v. MetropolitanLife Ins. Co., 40 F.3d 505, 510 (1st Cir. 1994)("[Bad faith breach of contract [is indicated] where there is evidence of morally reprehensible conduct directed at the general public . . . or an extraordinary showing of a disingenuous or dishonest failure to carry out the contract"; here, insurer's honest and reasonable belief that it was not obligated to pay is not bad faith.); Mohr v. Dix Mut. County Fire Ins. Co.,493 N.E.2d 638, 645 (Ill.App. 4th Dist. 1986) (finding that the trial court did not abuse its discretion in finding insurer engaged in vexatious and unreasonable delay in settling claim where testimony showed: insurer ignored insured's attempts to discuss dispute; and insurer had attitude that insured's financial situation would dictate his accepting inferior settlement offer).
The plaintiffs are incorrect in their argument that as a matter of law, the defendant's denial of a defense and coverage based on extrinsic evidence constituted breach of the covenant of good faith and fair dealing. At most, the plaintiffs have established that the defendant was incorrect in its coverage analysis. The plaintiffs have not, however, established that such analysis was accomplished with bad faith as they have failed to show that the defendant "conscious[ly] [did] . . . a wrong because of dishonest purpose or moral obliquity." Beckman v.People Express, Inc., supra, 205 Conn. 171.
As a threshold matter, the plaintiffs do not identify what extrinsic evidence they fee the defendant incorrectly relied on in denying them coverage. In the coverage denial letter, the defendant asserts that it did not have coverage or defense duties to the plaintiffs in the underlying action against them as: (1) the underlying plaintiffs did not suffer property damage "duringthe policy period" as they acquired the property two years after the last Travelers policy expired, and therefore (2) the parties suffering property damage during the policy periods were the plaintiff-insureds from whom coverage is excluded by policy provision. The relevant query is whether the property damage occurred during the policy period, not whether the complaining party suffered the damage within the policy period: "The Travelers agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of . . property damage . . . [which] occurs during the policy period." "Language in an insurance contract is to be given its natural and ordinary meaning, unless that language unclear or ambiguous, in which case it must be construed to favor the CT Page 6700 insured, since the insurer wrote the language." Firestine v.Poverman, supra, 388 F. Sup. 951, cited in Krevolin v. Dimmick,
supra, 39 Conn. Sup. 51. While the defendant's coverage analysis was incorrect the plaintiff does not prove that it was accomplished in bad faith.
The plaintiffs have also failed to establish the defendant's bad faith in its asserting policy exclusions as reasons for denying coverage. The denial letter asserts that the underlying complaint's allegations come within the following policy exclusions (1) property damage excluded by warranty agreement; (2) the damage to land exclusion; and (3) the remediation coverage exclusion (excavation, grading, and filling). The defendant's conclusion as to its duty to defend and indemnify its insured, based on these exclusions, is incorrect as the underlying complaint alleges damage that falls outside these exclusions: the damage to the state's water supply.[16] Again, while the conclusion is incorrect, the plaintiffs offer no proof that it was arrived at in bad faith.[17] "[Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity, it contemplates a state of mind affirmatively operating with furtive design or ill will." Beckman v. PeopleExpress, Inc., supra, 205 Conn. 171.
The plaintiffs have likewise failed to prove the defendant's bad faith in its asserting special defenses for (1) "claims . . . not covered . . . to the extent they do not arise out of an occurrence" and for (2) "claims . . . to the extent . . the pollution exclusion . . . applies." The defendant's putting forth these exclusions using the qualifying language "to the extent" that the exclusion applies — evidences an intent by the defendant rot to mislead the plaintiffs as to these defenses, and therefore they were not put forth in bad faith. The plaintiffs are likewise incorrect that the defendant put forth its settlement special defense in bad faith. The plaintiffs argue that the deposition testimony they took from the defendant's account manager, McDonald, wherein she stated that Olson Brothers had not signed a settlement agreement with respect to the Travelers insurance policies, proves that the defendant knew that no agreement existed. The McDonald deposition testimony manifests her utter confusion at what she was being asked. At most, her deposition proves that she believed that a settlement agreement existed, but it does not establish that the defendant knew that no such agreement existed and therefore, necessarily, asserted CT Page 6701 its settlement special defense in bad faith.[18]
Issues of fact thus remain in dispute as to the defendant's alleged bad faith in asserting the known loss defense[19] as a special defense, as well as the defendant's alleged bad faith in its taking ten months to disavow the plaintiffs' claims for a defense and indemnification. See, Maher v. Connecticut Ins.Placement Facility, supra, 40 Conn. Sup. 304-05 (finding that the defendant insurer's "failure to inform the plaintiff [insured] of the denial of its claim until the anniversary date of the [subject] fire raises questions of fact regarding the defendant's exercise of good faith"). The plaintiffs' motion for summary judgment as it relates to count three is therefore denied.
Defendant's Motion for Summary Judgment
The defendant moves for summary judgment based on its contention that it has no duty to defend or indemnify because the complaint alleges that the property damage was in "existence prior to the execution of the asset . . . and . . . [p]urchase [agreements; on November 16, 1991," and that this necessarily means that the damage would have to have occurred either before the defendant provided coverage or while the plaintiffs were owners. The defendant argues that it would have no coverage duties in either case as it was either not the insurer or the damage was to property owned, occupied or alienated by the insured and thus excluded by the policies' provisions.
The plaintiffs argue in opposition that the defendant owed it a defense in the underlying action as (1) the underlying complaint alleged that the property damage occurred during the policies' coverage periods; and as (2) black letter insurance law requires an insurer defend its insured where the relevant complaint alleges damage that is even possibly within the policy coverage and where the complaint does not unequivocally trigger any policy exclusions. These arguments have been addressed in the resolution of the plaintiff's motion for summary judgment as it relates to the first count of the complaint. The defendant's motion is therefore denied because as a matter of law, an insurer has a duty to defend its insured when the relevant complaint alleges damage which even possibly comes within the policy coverage. The reasoning which this court employed in granting the plaintiff's motion for summary judgment on this same issue is herein incorporated by reference. CT Page 6702
The Defendant's Cross Motion for Summary Judgment
The defendant also filed a cross motion for summary judgment based on it contention that it owed the plaintiffs no defense and indemnity duty in the underlying action because the damages alleged were voluntarily incurred by me underlying plaintiffs. The defendant asserts that the complaint makes "no allegation . . . that the [underlying plaintiffs] were required by any governmental or third party action, notice, suit or letter to evaluate, remove, analyze or dispose of the contaminated soils." The defendant concludes that as there was no legal claim by anyone against the underlying plaintiffs requiring them to incur remediation costs, there are therefore no sums which the defendant could have become "legally obligated" to pay as damages.
The plaintiffs argue in opposition that the relevant query in assessing whether the underlying complaint pleads damages within the policy provision whereby "Travelers agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages," is whether the policyholders (the plaintiffs) have been sued, not whether the underlying plaintiffs were sued. The plaintiffs assert that they were sued by the underlying plaintiffs for damages. In addition, the plaintiffs assert that the cleanup costs which the underlying plaintiffs incurred constitute damages.
"Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction . . . If the terms of the policy are clear and unambiguous, then the language . . . must be accorded its natural and ordinary meaning . . . When the words of an insurance contract are, without violence, susceptible of two . . . interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." (Citations omitted.)Heyman Associates No. 1 v. Insurance Co. of Pennsylvania,231 Conn. 756, 769, 653 A.2d 122 (1995). See Avondale Industries,Inc. v. The Travelers Indem. Co., 887 F.2d 1200, 1206 (2d Cir. 1989), cert. denied, 496 U.S. 906, 110 S.Ct. 2588 (1989) (terms of insurance contract to be accorded a natural and reasonable meaning corresponding to the reasonable expectation and purpose of the ordinary businessman) (citations omitted; internal quotation marks omitted).
Damages are generally understood to encompass "pecuniary CT Page 6703 compensation for loss, detriment or injury." Dinapoli v. Cooke,
supra, 43 Conn. App. 427. In addition. "damages . . . may include funds necessary for restoration of third parties' properties."Avondale Industries. Inc. v. The Travelers Indem. Co., supra, 887 F.2d 1206.
In General Casualty Co. of Wisconsin v. Hills,209 Wis.2d 167, 181, 561 N.W.2d 718, 724 (1997), the Supreme Court had the opportunity to interpret the "as damages" provision of an insurance contract in the case where an insured damaged a third party's property and sought a defense and indemnity from its insurer. "[A] reasonable insured . . . would interpret the phrase `as damages' to include coverage for a claim brought by [third] parties which obligates him or her to pay monetary sums because of the negligent contamination of property. . . ." Id. In reaching its holding in Hills, the Supreme Court distinguished the Hills case from a case wherein it would apply the minority rule that response and remediation costs do not constitute damages within the meaning of CGL policies as they are equitable or preventive in nature. Id., p. 178. The Hills insured sought damages within its insurer's CGL policy as it sought to compensate a third party for damage done to that third party's property. Id., p. 181.
The plaintiffs are thus correct in their conclusion that the insurer owes them a defense and indemnity because the plaintiffs have become "legally liable" for "damages" as those terms are used within the instant policies. The plaintiffs correctly point out that they are asking their insurer to indemnify them for the damage they did to a third party's property. They correctly assert that their policies entitle them to indemnification from their insurer for "their obligation . . . to pay monetary sums because of [their] negligent contamination of property. . . ."General Casualty Co. of Wisconsin v. Hills, supra,209 Wis.2d 183.
The defendant is incorrect m its conclusion that it does not owe the plaintiffs a defense and indemnification because the underlying plaintiffs voluntarily assumed the remediation costs. It is not the underlying plaintiffs who are seeking indemnification from heir insured; it is the plaintiffs. Thus, the question of whether the underlying plaintiffs were under a legal obligation to pay remediation costs is irrelevant for present purposes. The salient question, to which the answer is "yes", is whether an insured's costs which curs as a result of CT Page 6704 its negligent or reckless acts, are compensable "as damages" with; e meaning of its CGL insurance policies.
The defendant's cross motion for summary judgment is therefore denied. As a matter of law, the defendant owes the plaintiffs a defense and indemnity because as the plaintiffs have become legally liable for damages within the meaning of the policies' provisions.
In summary, the plaintiffs' motion for summary judgment is granted as to count one but denied as to counts two and three. The defendant's motion for summary judgment and cross motion for summary judgment are both denied.
Jonathan E. Silbert, Judge